## SANDERS *v.* SANDERS.

56  585
74  18)

### Opinion delivered November 12, 1892.

*Homestead—Liability—Money converted by attorney.*

Under Constitution 1874, art. 9, sec. 3, which provides that the homestead of a married man shall not be subject to the lien of any judgment such as may be rendered against, *inter alia*, " attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity," where an attorney, a married man, received money to indemnify himself against liability as surety for his client and converted it to his own use, his homestead cannot be subjected to the lien of a judgment for such money, since the money was not collected in his capacity as attorney, and was held by him, not as trustee of an express trust, but as surety to protect himself against loss.

Appeal from White Chancery Court.

DAVID W. CARROLL, Chancellor.

*W. R. Coody* for appellant.

1. The proof shows that A. P. Sanders received the money as an attorney. 13 Ark. 644 ; 11 *id.* 212; 38 *id.* 96.

2. It follows that his homestead comes within the exceptions of art. 9, sec. 3, Const. 1874.  35 Ark. 28; Thompson on Homesteads and Ex. sec. 547.

3. No change of securities, or subsequent contract to pay in future, or with interest, could change the claim from a fund collected as an attorney to a simple debt by contract.  Thomps. Homestead and Ex. secs. 311, 312, 359; 45 Ark. 376.

*J. W. House* for appellee.

1. House & Sanders were never employed to collect the insurance.  It was a simple contract debt by which they were to keep the money until the attachment suit was decided.

2. Even if it was a breach of trust, it was waived, and the subsequent agreement that A. P. Sanders should pay 10 per cent. on the amount made it a simple contract debt.  76 Va. 839; 67 How. Pr. 241; Perry on Trusts, secs. 849, 870; 2 Herm. on Estoppel, secs. 768-9, 1063, 1064-5; 11 Heisk. 589; 86 N. Y. 339; 29 Mich. 153; 68 Ala. 167.

BATTLE, J.  Appellant brought this action in the White circuit court in chancery, to subject the homestead of Albert P. Sanders, deceased, to sale to pay a claim which he holds against the estate of the deceased.  At the time Albert P. died, he left a widow and a minor child surviving him.  This suit was brought while the widow remained unmarried, and the child a minor.

The claim sued on, as we find from the evidence, originated as follows :  In January, 1882, T. N. Sanders, the appellant, owned a small stock of hardware and tinners' tools, which were insured for his benefit by the Fire Association of Philadelphia, to the extent of $500, against fire.  In February following the entire stock was burned. The loss was adjusted at $500.  Before it was paid, Witter, Langstaff & Co., who were creditors of T. N. Sanders, brought an action against him ; sued out an

order of attachment, and caused the Fire Association to be summoned as a garnishee.

Albert P. and Joseph W. House were then attorneys at law, and associated as partners under the firm name of House & Sanders. T. N. Sanders employed them in his suit. The Fire Association paid the $500 to the sheriff who held the order of attachment. To relieve the money from the attachment and garnishment, T. N. Sanders caused House & Sanders, in their individual capacity, to execute a bond to the sheriff, conditioned that, if the attachment was sustained, the $500 would be forthcoming and subject to the order of the court. The bond was executed upon the condition, and with the understanding and agreement, that House & Sanders should hold the money until the suit by the creditor was decided. In pursuance of this agreement, a check for the $500 was delivered to Albert P., and he collected it and used the money. Appellant made out a claim against his estate for the money and presented it to the administrator, and a part of it was allowed by the administrator and the probate court.

Was the homestead of the deceased subject to sale to satisfy the debt contracted by the conversion of the money? Appellant contends that it was a debt for moneys collected and used by an attorney, and that the homestead, under section 3 of article 9 of the Constitution, was subject to sale under execution or other process which could have been issued, in the lifetime of the deceased, on a judgment for the same. The section referred to is as follows : " The homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against *executors*

*administrators, guardians, receivers, attorneys* for moneys collected by them and *other trustees* of an express trust for moneys due from them in their fiduciary capacity."

Questions similar to the one presented for our decision in this case have been decided by courts under the bankrupt acts of the United States. The bankrupt act enacted by Congress in 1841 provided that all persons whatsoever, residing in any State, territory or district of the United States, owing debts which shall not have been "created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other *fiduciary capacity*," shall, on a compliance with the requisites of the bankrupt law, be entitled to a discharge under it; and further declared, among other things, that no person should be entitled to a discharge who should "apply trust funds to his own use." In the case of *Chapman* v. *Forsyth*, 2 How. 202, these clauses were construed by the Supreme Court of the United States. "The case was an action of assumpsit for the proceeds of 150 bales of cotton shipped to and sold by the defendants as brokers or factors of the plaintiff. One of the defendants pleaded a discharge in bankruptcy." Mr. Justice McLean, speaking for the court, said: "If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and the violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer,' 'execu-

tor,' 'administrator,' 'guardian,' or 'trustee,' are not
cases of implied but special trusts, and the 'other fidu-
ciary capacity' mentioned, must mean the same class of
trusts.    The act speaks of technical trusts, and not those
which the law implies from the contract.    A factor is
not, therefore, within the act.    The view is strengthened
and, indeed, made conclusive by the provisions of the
fourth section, which declares that no 'merchant, banker,
factor, broker, underwriter, or marine insurer,' shall be
entitled to a discharge, 'who has not kept proper books
of accounts.'    In answer to the second question, then,
we say, that a factor, who owes his principal money
received on the sale of his goods, is not a fiduciary debtor
within the meaning of this act."

In *Hennequin* v. *Clews*, 111 U. S. 676, the question
decided was, " whether a discharge in bankruptcy under
the act of 1867 operates to discharge the bankrupt from
a debt or obligation which arises from his appropriating
to his own use collateral securities deposited with him
as security for the payment of money or the performance
of a duty, and his failure or refusal to return the same
after the money has been paid or the duty performed ? or
whether a debt or obligation thus incurred is within the
meaning of the 33d section of said act,   *    *    *   which
declares that 'no debt created by the fraud or embez-
zlement of the bankrupt, or by his defalcation as a public
officer, or while acting in any fiduciary character, shall
be discharged under this act?'"    Mr. Justice Bradley,
after a review of the authorities, in delivering the opin-
ion of the court, said :   "The present case is not pre-
cisely like either that of *Chapman* v. *Forsyth*, or *Neal*
v. *Clark;** but it is very difficult to distinguish it, in
principle, from the cases of commission merchants and
factors failing to account for the proceeds of property
committed to them for sale.    There is no more—there is

*95 U. S., 704.

not so much—of the character of trustee, in one who holds collateral securities for a debt, as in one who receives money from the sale of his principal's property —money which belongs to his principal alone, and not to him, and which it is his duty to turn over to his principal without delay.  The creditor who holds a collateral holds it for his own benefit under contract.  He is in no sense a trustee.  His contract binds him to return it when its purpose as security is fulfilled ; but if he fails to do so, it is only a breach of contract, and not a breach of trust.  A mortgagee in possession is bound by contract, implied if not expressed, to deliver up possession of the mortgaged premises when his debt is satisfied ; but he is not regarded as guilty of a breach of trust if he neglects or refuses to do so, but only of a breach of contract.  *  *  *  It is, no doubt, true, as said in *Chapman* v. *Forsyth*, that a construction of the excepting clauses which would make them include debts arising from agencies and the like, would leave but few debts on which the law could operate.  At all events, we think that the previous decisions of this court and of the State courts in the same direction, accord with the true spirit and meaning of the act of Congress, and with the necessities of our business conditions and arrangements."

We think that the clause of the Constitution of this State which we have under consideration should be construed in a similar manner.  The policy of the bankrupt acts of Congress and the Constitution of 1874 are alike. Debts "created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee or while acting in any other fiduciary capacity" were not included in those from which a bankrupt was discharged.  The homestead is not, under the Constitution of 1874, exempt from sale under execution or other process issued on judgments rendered "against executors, administrators, guardians, receivers, attorneys for moneys

collected by them and other trustees of express trust for moneys due from them in their fiduciary capacity." The cases enumerated in each are cases of special trusts. The persons expressly designated as not coming within the homestead exemption of the Constitution of 1874 are persons who hold moneys exclusively for the benefit of others, and the relations between whom and those for whom they hold money are purely of confidence and trust; and the "other trustees of express trust" mentioned must mean the same class of trustees. The debts excepted are those contracted by them for such moneys.

Albert P. Sanders did not receive the money in this case as an attorney. The execution of bonds in attachment proceedings and receiving money as an indemnity for sureties are outside of the duties of an attorney. Albert P. received the money in this case, not as an attorney of appellant, but as one of his sureties to protect himself and House against any losses they might suffer on account of being sureties on the forthcoming bond.

This case is very much like that of *Hennequin* v. *Clews*. Albert P. held the money, which was converted, for the benefit of himself and House under contract. His contract bound him to return it, in some form, to appellant when its purpose as a security was fulfilled. His failure to do was a breach of contract. He did not hold for the benefit of appellant, except in the manner stated; and did not, therefore, come within that class of persons who are excluded from the benefit of the homestead exemption by the Constitution of 1874.

The decree of the court below is affirmed.