## CARR v. HARRINGTON.

### Opinion delivered April 7, 1913.

1. HOMESTEAD—EXEMPTIONS.—The homestead of a deceased husband and father is not exempt from a lien in favor of the fiduciary of an express trust in which the deceased was trustee, where he held money of the plaintiff in the capacity of a trustee, under § § 3 and

6, article 9, of the Constitution of 1874, and the plaintiff is not required, in order to have a lien against the homestead of deceased, to reduce the claim to judgment before the death of the deceased. (Page 541.)

2.  HOMESTEAD—INTEREST OF WIDOW AND CHILDREN.—The widow and children can not claim the homestead exemption unless the husband and father could do so.   (Page 541.)

3.  TRUSTS—HOW CREATED.—Trusts arise when property has been conferred upon one person and accepted by him for the benefit of the other, and it is essential that the ownership conferred be connected with a right or interest or duty for the benefit of another, and that the property be accepted on those conditions.   (Page 543.)

4.  TRUSTS—EXPRESS TRUSTS.—A demand which arises out of a contract of bailment or agency in the ordinary course of business, or a transaction which is a mere loan or credit if induced by confidence in the integrity or punctuality of the debtor, does not constitute an express trust; liability under an express trust must spring from a breach of trust, the defalcation or indebtedness must occur and exist while the trustee is acting in a fiduciary character, and must be no mere debt, but a contract which results from the rightful possession of money that belongs to another, and which is being used for his benefit.   (Page 544.)

Appeal from Garland Circuit Court; *C. T. Cotham,* Judge; affirmed.

*James E. Hogue,* for appellant.

1.   The court erred in ordering the homestead sold in satisfaction of the two $500 demands, because they were not reduced to judgment during Carr's lifetime. Section 3 of article 9 of the Constitution refers to the homestead rights of a man while he is alive, and is intended to exempt his homestead from the liens of judgments and decrees except such as may be rendered upon a certain class of obligations.   This section refers to liens and not to debts.

Section 6 of that article prescribes the rights of a man's widow and minor children to his homestead after his death.

At the time of Carr's death there was no judgment or decree upon any character of debt against him.   He could have made any disposition of his homestead he saw fit, without interference from creditors.   43 Ark.

429; 52 Ark. 101; *Id.* 493; 56 Ark. 156; 57 Ark. 242; 86 Ark. 386.  And his widow and child succeeded to all his rights in the homestead he owned at the time of his death.  Thompson on Homestead Exemptions, § 547; 21 Cyc. 576, 577; 101 Ark. 296.

2.  The court erred in holding that Carr was the trustee of an express trust.

An express trust can not be created by a simple declaration or even an intent of one of the parties, but, in order to create such a trust there must be a contract wherein there is a meeting of minds of the contracting parties, sufficient words, a definite subject, a certain or ascertained object and be supported by a consideration. 2 Words & Phrases, 1996; 39 Cyc. 57; 95 Ark. 463; 56 Ark. 585, 591.

*J. B. Wood,* for appellee.

1.  The homestead is not exempt.  The provisions of the Constitution of 1874 relied on by appellant do not alter the rule laid down in *Gilbert* v. *Neeley,* 35 Ark. 24. 53 Ark. 303.  The lower court having found as a matter of fact that Carr held the money in question as trustee of an express trust, this court will not reverse that finding if there is any evidence legally sufficient to sustain it. 97 Ark. 438; 100 Ark. 166; 74 Ark. 478; 76 Ark. 115.

2.  The evidence is sufficient to establish an express trust.  Even if the first five hundred dollars items were not the money of appellee at the time the memorandum was made, the endorsement of such memorandum on the back of the deposit slip which was the *indicia* of ownership and the delivery of said slip to appellee would show a completed gift in trust, or declaration of trust, so as to vest all of the beneficial interest in her.  51 Am. St. Rep. 382, and note 390-392; 35 *Id.* 17, and note 26; 34 *Id.* 189.  See also 74 Ark. 109; 56 Ark. 555, 560; 2 How. 202; 111 U. S. 676; 39 Am. Rep. 719, and note 722-726.

SMITH, J.  Appellant is the widow of J. A. Carr, and upon his death qualified as administratrix of his estate.  Carr died on July 17, 1907, leaving his widow and one child, seven years old.  Appellee filed four dif-

ferent claims against this estate, amounting to $1,390, all of which were allowed by the probate court, and an appeal to the circuit court was taken, where, upon a trial *de novo,* there was a judgment in appellee's favor for all of the demands, except one for $250. Thereafter appellee filed his petition in the probate court, alleging that the said money was due her from the said J. A. Carr at the time of his death, as trustee of an express trust; that said moneys were held by him in his fiduciary capacity and that her claims and judgment came within the exceptions mentioned in section 3, article 9, of the Constitution; that the personal property of the said Carr and his other land, beside the homestead, were not sufficient to pay appellee's claim. The court heard the petition and found that two items, each for $500, were in the possession of Carr at the time of his death, as trustee of an express trust, and ordered that all of his land, including his homestead, be sold, provided the land, other than the homestead, be sold first, and the homestead reserved from sale in case the other land should prove sufficient. The administratrix appealed from this order to the circuit court, where the cause was heard upon an agreed statement of facts, the material portions of which are as follows:

"The claim of petitioner (appellee) against the estate of J. A. Carr, deceased, as shown by her account, affidavit and exhibits attached to same, which are now on file with the papers of the said estate in the probate court of Garland County, was duly probated against said estate and allowed by the probate court as a claim against said estate. From the order of the probate court allowing same, the administratrix appealed to this court where said claim was tried *de novo* on the ............... day of March, 1911, term, and judgment was given in favor of appellee and said claim was allowed as claim of said estate in the sum of ............... dollars with interest at the rate of 6 per cent per annum from ..........................., the item in said claim represented by the receipt dated June 18,

1902, for $250 having been disallowed by the circuit court.

"At the trial of the claim before the circuit court the original receipts of the said J. A. Carr, of which the copies attached to the said account are exact and correct copies, were introduced in evidence and found by the court to have been executed by the said J. A. Carr and signed by him. The said original receipts have been lost or misplaced by the attorneys for the said Amanda Harrington and it is agreed that the copies of said receipts, which are a part of the probate records, may be submitted as evidence before this court and returned to the files of the probate court.

"The said J. A. Carr, deceased, was during his life a negro school teacher in the public schools of Hot Springs and all parties interested in this action are negroes; the said Amanda Harrington being about sixty years of age and engaged in the business of renting rooms or a rooming house business; the said J. A. Carr was not engaged in or connected with a banking business and he and the said Amanda Harrington were intimately associated with each other during his lifetime. That said Carr frequently negotiated loans and sold real estate on commission, although he was not a regular or licensed real estate dealer. He was not a lawyer.

"The personal property and the real estate, other than the homestead, described in the petition herein are insufficient to pay plaintiff's claim and it will be necessary in order to pay same, that said homestead be sold. No part of said claim has been paid."

The circuit court found that the said J. A. Carr, at the time of his death, held in his hands, as trustee of an express trust, the sum of $1,000, as evidenced by the following writings:

First, a deposit slip, showing that $500 had been deposited by J. A. Carr in the Security Bank of Hot Springs on the 28th day of October, 1904, with this memorandum on the back of the deposit slip: "Held in trust

for Mrs. Amanda Harrington. (Signed) J. A. Carr, October 3, 1904.''

The other read as follows:

''November 14, 1905. Received of Mrs. Amanda Harrington, $500, to be held in trust by me as a deposit. J. A. Carr.''

The appeal involves only the two $500 items, and appellant challenges by this appeal the correctness of the court's action in ordering the homestead sold in satisfaction of these demands. Appellant insists that the action of the court was erroneous for two reasons; first, that the demands had not been reduced to judgment in Carr's lifetime; second, that Carr was not the trustee of an express trust.

These propositions, which will be discussed in their order, grow out of the proper construction of sections 3 and 6 of article 9 of the Constitution of the State.

''Section 3. The homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity.

''Section 6. If the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life, provided that if the owner leaves children, one or more, said child or children shall share with said widow and be entitled to half the rents and profits till each of them arrives at twenty-one years of age—each child's right to cease at twenty-one years of age—and the shares to go to the younger children, and then all to go to the widow, and provided that said widow

or children may reside on the homestead or not; and in case of the death of the widow all of said homestead shall be vested in the minor children of the testator or intestate."

Appellant's position is that the homestead is exempt, except as against certain liens specified in section 3, and that these judgment liens must be fixed in the lifetime of the debtor. The argument made is that section 3 prescribes the homestead rights of a man when he is alive and section 6 prescribes the rights of the widow and minor children after his death, and that if the demands against him are not reduced to judgments in his lifetime, that they can not become liens on his homestead after his death, without regard to their nature.

We do not concur in this view. The phrase, "shall not be subject to the liens of any judgment or decree of any court," was used by the framers of the Constitution rather than the phrase, "shall not be subject to any debts," because debts are not enforceable by the processes of the courts until they have been reduced to judgments or decrees, and there was no necessity to provide an exemption except against the lien of judgments or decrees which could be enforced against the debtor. But that the widow and children can not claim the homestead exemption unless the husband and father could do so, is settled by the previous decisions of this court.

In *Huffstedler* v. *Kibler,* 67 Ark. 241, Chief Justice BUNN, speaking for the court, said:

"In *Gilbert* v. *Neely,* 35 Ark. 24, also cited by appellants, it is said by this court (after discussing the subject of the construction of the homestead provisions in the Constitution of 1868): 'The widow and minor children, if there were minor children, did not, upon the death of the husband and father, succeed to a right more extensive, except as to the condition of occupancy, than he possessed,' citing Thompson on Homesteads, paragraph. 547.

"Now, what was the right of the father in that case,

and what was the right of the father in the lands in the case at bar, as against the privileged debts? The Constitution of 1868, by which the rights of the parties in both cases are fixed, expressly provided that the benefit of the homestead should not be extended to persons indebted for trust funds (article 12, paragraph 3). Alcorn in his lifetime could not have pleaded his homestead as exempt from the payment of these fiduciary or trust debts. Neither could the widow and minor children, if there were such, have claimed the homestead as exempt from the payment of such debts. That is the plain meaning of the decision last cited. The real estate of a decedent is assets in the hands of his administrator to pay his debts, except lands exempted as a homestead, but, in order to make the exception, the lands must be exempt.''

In the case of *State* v. *Atkins*, 53 Ark. 306, Chief Justice COCKRILL, for the court, said: ''The rights of the parties in that case were governed by the Constitution of 1868, while this case is controlled by the provisions of the Constitution of 1874; but there is nothing in the latter instrument to alter the rule established by the case cited.

''By section 3 of article 9 of the Constitution of 1874 the homestead is not exempt from sale under process issued for the collection of money due in his fiduciary capacity from a trustee of an express trust; and guardians are specially mentioned as such trustees. In that respect the provisions of the latter Constitution are specific in their application to this class of cases. As explained in the former case, the right of the minors to the homestead is a derivative right—they succeed to it as their ancestor possessed it, subject to the liabilities which legally existed against it in his hands. His death does not displace the superior right of the creditor to condemn the homestead for the satisfaction of a debt incurred by violation of a trust, any more than for the satisfaction of the specific liens to which the same provision of the Constitution renders the homestead liable.''

We come now to the question of greatest difficulty in the case, and that is, whether or not Carr was the trustee of an express trust. We do not know the details of the relationship between the deceased and the appellee, but we do know from the agreed statement of facts that appellee was an old negro woman and that she reposed great confidence in Carr. We know, too, that he was not a banker or real estate agent, yet it appears that he was engaged in making loans and real estate deals, and it is fairly inferable that he was using appellee's money for this purpose and for her benefit. It is manifest that the transactions between them did not constitute a gift of money nor the loan of money, and, while as stated, we do not know exactly the use intended to be made of this money, it is certain that that use was intended for the benefit of Amanda; and that she should be the beneficiary of its control and management; and the delivery of money by one party and its acceptance by the other, with that purpose, is sufficient to constitute a trust, although we do not know its details. It is a question as to the intention of these parties whether or not an express trust was created, and it is not sufficient that a trust be implied. Here Carr's control of the fund was absolute and the deposit was in his own name, and by his own writing he expressly acknowledged that the money constituted a trust fund and that his possession was that of a trustee.

Trusts arise when property has been conferred upon one person and accepted by him for the benefit of the other. In order to originate a trust, two things are essential; first, that the ownership conferred be connected with a right or interest or duty for the benefit of another; and, second, that the property be accepted on these conditions. Bouvier's Law Dictionary, vol. 2, page 1145, title "Trusts." The recent case of *Fidelity & Guaranty Co.* v. *Smith,* 103 Ark. 145, 147 S. W. 54, defines the meaning of the words "express trusts" as used in the section of the Constitution referred to. It was there said that "such provision has reference only

to the discharge of the duties of an express technical trust or such as is specifically mentioned in said article and was not intended to and does not cover the relation of an ordinary clerk, employee, agent or servant, who has confidence reposed in him for the collection of money." The facts in that case were that a station agent had made default in his settlement with the company and his shortage had been made good by the surety company which executed his indemnity bond, and after having sued the agent and recovered judgment, the surety company sought to subject the agent's homestead to the satisfaction of this judgment upon the ground that the agent's control of the company's money constituted an express trust, and in disposing of that question the court used the last above quoted language. And there are many cases to the same effect in the courts of other States, construing constitutional provisions similar to ours.

The rule appears to be that if a demand arises out of a contract of bailment or agency in the ordinary course of business, or if it was a mere loan or credit, induced by the confidence in the integrity or punctuality of the debtor, the transaction does not constitute an express trust. The existence of liability must spring from some breach of trust, the defalcation or indebtedness must occur and exist while acting in a fiduciary character, and must be no mere debt, but a contract which results from the rightful possession of money that belongs to another, and which is being used for his benefit. Justice BATTLE, speaking for the court, in the case of *Sanders* v. *Sanders,* 56 Ark. 585, said: "The homestead is not, under the Constitution of 1874, exempt from sale under execution or other process issued on judgments rendered against executors, administrators, guardians, receivers, attorneys for moneys collected by them and and other trustees of express trust for moneys due from them in their fiduciary capacity. The cases enumerated in each are cases of special trusts. The persons expressly designated as not coming within the homestead

exemption of the Constitution of 1874 are persons who hold moneys exclusively for the benefit of others, and the relations between whom and those for whom they hold money are purely confidence and trust; and the other trustees of express trust mentioned must mean the same class of trustees. The debts excepted are those contracted by them for such money.''

The character of the tranaction intended is indicated by the use of the word ''other.'' Certain trusts are named, towit: executors, administrators, guardians, receivers and attorneys for moneys collected by them, and then the phrase ''and other trustees of express trusts for moneys due from them in their fiduciary capacity'' is used. The persons above named include the principal relations where one person has the control and management of property for the use and benefit of another, and after naming them specially, 'and with the evident purpose of including all others, who control another's money under an express agreement to that effect, the Constitution makers added the clause ''and other trustees of an express trust.''

Upon a consideration of all the evidence in this case, we are of opinion that Carr was the trustee of an express trust within the meaning of the constitutional provision above quoted and the judgment of the circuit court is accordingly affirmed.