TAYLOR *v.* CORNING BANK & TRUST COMPANY.

Opinion delivered April 27, 1931.

*Sam Rorex* and *Nat R. Hughes,* for appellant.

*Oliver & Oliver, Edward B. Downie* and *Shields M. Goodwin,* for appellee.

MEHAFFY, J. This action was begun in the Pulaski Chancery Court by the Corning Bank & Trust Company against Walter E. Taylor, Bank Commissioner in charge of the American Exchange Trust Company, an insolvent banking institution. The appellee asked that its claim against the American Exchange Trust Company be decreed to be a prior claim to the extent of $32,365.70 and paid in full with interest at two per cent., and that the balance of petitioner's claim in the sum of $11,667.30 be ordered to be allowed as a general claim.

The American Exchange Trust Company became insolvent on November 17, 1930, and five days thereafter Walter E. Taylor, State Bank Commissioner, took charge of its affairs. Corning Bank & Trust Company became insolvent about the same time, and its assets were later purchased from the Bank Commissioner by appellee, the Corning Bank & Trust Company.

Corning Bank & Trust Company had been a customer of the American Exchange Trust Company for a number of years. Between November 1, 1930, and November 5, 1930, the Corning Bank & Trust Company sent to the American Exchange Trust Company certain drafts amounting to approximately $32,000. These drafts with bills of lading attached were sent for collection and credit, and the American Exchange Trust Company credited the Corning Bank & Trust Company with the amount "subject to final payment" and forwarded the drafts to South Carolina and Alabama for collection.

On the 7th of November the Corning Bank & Trust Company wrote a letter to the American Exchange Trust Company as follows:

"November 7th, 1930·
"American Exchange Trust Co.,
"Little Rock, Ark.
"Attention Mr. J. J. McGrath.
"Gentlemen: All drafts with bills of lading attached that are now in transit and all that are forwarded to your bank in the future are for collection only. Kindly advise us by wire as fast as these items are paid that we may advise you disposition of the funds.
"Yours very truly,
"Cashier."

The American Exchange Trust Company, when it received the drafts, gave credit to the Corning Bank & Trust Company subject to final payment and immediately sent the drafts to other banks for collection and credit. All drafts were paid to the collecting banks, and bills of lading surrendered before the failure of the American Bank. The drafts in question were drafts of the Clay County Cotton Company upon W. A. Handley Manufacturing Company of Roanoke, Alabama, and Cooper & Griffin of Greenville, South Carolina.

The appellant answered and denied that any part of appellee's claim should be decreed as a prior or preferred claim and alleged that appellee had only a general claim against the American Exchange Trust Company. All these claims were collected by the collecting banks and were afterwards received by the American Exchange Trust Company.

After the letter of November 7 was written the president of the Corning Bank & Trust Company called Mr. Covey, who was in charge of country bank connections for the American Exchange Trust Company by telephone, and also Mr. McGrath, and told them as soon as the drafts were paid to wire the Corning Bank & Trust Company and they would give instructions as to how to dispose of the funds collected. On the 12th of November the president of the Corning Bank & Trust Company again called Mr. Covey and informed him that as soon as the items had been paid to inform them so

they might instruct the American Exchange Trust Company as to the disposition of the funds as soon as they were collected.

The cashier of the Corning Bank & Trust Company produced a carbon copy of the letter which had been written on the 7th of November and he testified that he placed the letter in an envelope, properly addressed, to the American Exchange Trust Company, Little Rock, Arkansas, sealed the letter, stamped it with United States postage stamp, and deposited it in the United States Post Office at Corning. The envelope had return card on it but was never returned.

On November 14, 1930, the American Exchange Trust Company charged the Corning Bank & Trust Company $5.44, being the cost of collecting W. A. Handley Mfg. Co. draft and forwarded a memorandum of the charge to the Corning Bank & Trust Company on that date.

It appears from the books of the American Exchange Trust Company that this charge was made by it on the 14th. On the 10th of November the American Exchange Trust Company charged the Corning Bank & Trust Company with $4.01, cost of collecting draft at Roanoke, Alabama, and on the 12th of November a charge was made of $3.14 for collecting another draft.

Beall Hempstead, vice-president of the American Exchange Trust Company, testified to receiving the drafts sent by the Corning Bank & Trust Company, and that they were notified by the bank at Atlanta, Georgia, on the 13th of the collection of certain drafts and by the bank at Charlotte, N. C., on the 12th of November as to certain other drafts, and all the amounts in controversy here were received by the appellant.

This witness also testified that he had looked through the files and had been unable to find the letter of November 7, and had no record of receiving such letter. Before these transactions, this witness testified that the American Exchange Trust Company had been giving the Corning Bank & Trust Company credit for items sent like

these, and that they were subject to check immediately upon giving credit, just like any other open account. When the drafts were collected at Charlotte, N. C., they were credited to the Union Trust Company of Cleveland, Ohio, and by it were credited to the American Exchange Trust Company. All of these drafts were paid before the insolvency of the American Exchange Trust Company. The American Exchange Trust Company suspended on November 15, 1930, and five days thereafter it was placed in the hands of the State Bank Commissioner.

This witness testified also if the bank had received the letter of November 7 the bank would make the items just collection items. If one wanted an item for collection, it was charged to his account and entered for collection if it had been previously credited to his account. It was admitted that the Corning Bank & Trust Company had several thousand dollars to its credit in excess of the amount of these drafts, and this condition continued from the 5th of November until the bank closed.

They were not obligated to pay this amount until the drafts were collected. If a depositor deposited an item for collection, they would not permit checking against it.

Mr. McGrath was the head of the collection department and had direct charge of these items. Shortly after the bank closed, it was discovered that McGrath had absconded with some of the bank's money.

The material facts are practically undisputed. There is no dispute about the fact that the drafts mentioned in appellee's petition with bill of lading attached were sent to the American Exchange Trust Company for collection and credit. Although there is some conflict in the authorities, the general rule is that the title to commercial paper received for collection by a bank and forwarded to its correspondent in the usual course of business does not vest in the bank to which the paper is sent, but remains in the sending bank until the collection has been made. After the collection is made, then the relation of debtor and creditor exists. Before collection,

however, if loss occurred, it would be borne by the sending bank and not the bank to which the papers were sent. Prior to collection the relation of principal and agent exists.

After these drafts were sent, the appellee proved that the letter above referred to was written and mailed to the American Exchange Trust Company.

"The rule is well settled that, if a letter is properly mailed, it is presumed that it reached the party to whom it was addressed and was received by him in the due course of mail." *Southern Engine & Boiler Works* v. *Vaughan,* 98 Ark. 388, 135 S. W. 913, Ann. Cas. 1912D, 1062.

"Where a letter has been properly mailed, the law raises a presumption that it was duly received by the person to whom it was addressed, but as was said by the Supreme Court of the United States in *Rosenthal* v. Walker, 111 U. S. 193 [4 S. Ct. 386], 'the presumption so arising is not a conclusive presumption of law, but a mere inference of fact founded on the probability that the officers of the government will do their duty.' As was declared by our court in *Planters' Ins. Co.* v. *Green,* 72 Ark. 305, 80 S. W. 151, 'the presumption, in the absence of evidence to the contrary, is that it was received, but this presumption may be rebutted.' " *Bluthenthal* v. *Atkinson,* 93 Ark. 252, 124 S. W. 510.

The rule is well established that, if a letter is properly mailed, it is presumed that it reached the party to whom it was addressed and was received by him in the due course of mail. This presumption may be rebutted, but, if not rebutted, it is sufficient to support a finding that the letter was received.

In this case the undisputed evidence shows that the letter was mailed. It was directed "The attention of Mr. McGrath." Mr. McGrath did not testify. The evidence shows that he had taken some of the bank's money and absconded, but was, at the time this case was tried, in the Hospital for Nervous Diseases. Mr. Hempstead testified that J. J. McGrath was in charge of the collec-

tion department of the American Bank and he was informed that he was in the Hospital for Nervous Diseases.

The evidence also shows that Mr. McGrath had committed some forgeries, and that some of the letters were blurred so that the persons in charge of the bank could not tell what they meant, and they telephoned to the Corning Bank for information.

Mr. Hempstead, one of the vice-presidents of the bank, stated that he had looked through the files and could not find any such letter as the one mailed on the 7th. He said that, if they had received the letter, they would immediately have charged the drafts back to the account and handled it as a collection.

The evidence also showed that some of the letters had been lost. In addition to the letter, Corning Bank officials testified that they telephoned on different occasions to officers of the American Exchange Trust Company, giving practically the same instructions that were given in the letter, and this testimony is undisputed. When the Corning Bank changed its instructions, the American Exchange Trust Company was then the agent of the Corning Bank & Trust Company for collection, and it was its duty to notify the Corning Bank in accordance with instructions, and it was not, and never thereafter became, the owner of the paper or the proceeds.

Appellant calls attention to numerous authorities by this court. It has said: "It is likewise well established that a bank receiving a draft for collection merely is the agent of the remitter, drawer or forwarding bank, and takes no title to the paper or the proceeds when collected, but holds same in trust for remitting." *Darragh Co.* v. *Goodman,* 124 Ark. 532, 187 S. W. 673; *Rainwater* v. *Fed. Reserve Bank of St. Louis,* 172 Ark. 631, 290 S. W. 69.

Act 107 of the Acts of 1927 provides in substance among other things that the owner of the proceeds of a collection, when said collection was paid in cash, thereby increasing the assets of the bank, has preference.

Here the Corning Bank, as we have already said, was the owner of the proceeds of the collection. The collection was paid in cash. It increased the assets of the bank. The bank at the time the remittance was sent to it, and at all times thereafter until the Bank Commissioner took charge, had on deposit to the credit of the Corning Bank sums in excess of the amount of these drafts, and had, when the bank closed, between $200,000 and $300,000 cash in the bank.

Appellant cites and relies on the cases of *Hawaiian Pineapple Co.* v. *Brown,* 69 Mont. 140, 220 Pac. 1114 and *California Packing Corp.* v. *McClintick,* 75 Mont. 72, 241 Pac. 1077, and says that these cases announce the correct rules as follows:

"1. That the transaction created relation of principal and agent, not creditor and debtor, between itself and the bank, so that the bank would be deemed to hold the amount collected from the company in trust for the plaintiff as beneficiary.

"2. That by the transaction the assets of the banks were augmented.

"3. Ability to trace the trust funds into the possession of the bank."

Under the evidence in this case the relation of principal and agent, and not of creditor and debtor, existed. The undisputed proof shows that by the transaction the assets of the American Exchange Trust Company were augmented. The undisputed evidence also shows that the funds were traced into the hands of appellant.

Appellant, however, contends that the relationship of debtor and creditor could not have been changed without the consent of the American Bank because the account of the Corning Bank would have been overdrawn almost $12,000.

The evidence, as well as the stipulation of counsel, shows this contention to be incorrect. As to whether the letter of November 7 was written and received by the American Exchange Trust Company changing the di-

rections, was a question of fact, and the finding of the chancellor is sustained by the evidence.

Appellant contends that after this letter, or after it was claimed to have been written, other items were sent by the Corning Bank in the usual way and the proceeds placed to the credit of the Corning Bank by its consent. The evidence, however, shows that the instructions contained in the letter above referred to applied to drafts with bills of lading attached, and that all of the items that were thereafter sent to be collected and credited were items that had no bills of lading attached.

The undisputed proof shows that the assets of the American Exchange Trust Company were increased and also shows that the proceeds of the collections of these drafts came to the American Bank.

The chancellor held that the claim for $32,365.70 was a preferred claim, and that of this amount $30,748.02 had been specifically identified in its original or traceable form as the property of the Corning Bank & Trust Company, and that it came into the hands of the Bank Commissioner, and it was ordered and decreed that this sum should be paid in full out of any assets of the American Exchange Trust Company available after the administration. It was also decreed that the $1,617.68 should be allowed as a preferred claim, but, appellee having failed to identify this amount in its original or traceable form, coming into the hands of the Commissioner, it should be paid on the basis as other like prior claims. It was also decreed that $11,667.30 be allowed as a general claim.

The finding of the chancellor on the questions of fact are supported by the preponderance of the evidence, and the decree is affirmed.