KANSAS CITY LIFE INSURANCE COMPANY *v.* TAYLOR.

Opinion delivered November 23, 1931.

*Carmichael & Hendricks,* for appellant.

*Gillison & Gillison,* for appellee.

MEHAFFY, J.   D. S. Clark was receiver in the case of *Kansas City Life Insurance Company* v. *Jewel Realty Company,* and was also president of the Chicot Trust Company.  He was appointed receiver to rent out the land of the Sunnyside plantation, and rented it to Sam Epstein for $5,000, taking Epstein's note due December 1, 1930, for the rent of that year, and the note was paid on November 15, before it was due, to Clark, receiver, by a check drawn on the Chicot Trust Company, and deposited by Clark, as receiver, in said bank.  The bank did not open on the 17th of November.  It was open on

the day the deposit was made and was never open for business thereafter.

The property was rented by Clark before the sale under the foreclosure suit of *Kansas City Life Insurance Company* v. *Jewel Realty Company,* and the Kansas City Life Insurance Company became the purchaser.

D. S. Clark, receiver, and the appellant, filed an intervention, claiming that they were entitled to be paid the $5,000 in full; that the appellant is now the owner of the Sunnyside plantation in Chicot County, and that it had been rented in the year 1930 for $5,000. It was alleged that on November 15, 1930, Epstein paid the note, and Clark deposited the $5,000 as receiver, and that almost immediately thereafter the Chicot Trust Company closed its doors; that under act 107 of the Acts of 1927 the owner of said check and proceeds is entitled to preference; that the Kansas City Life Insurance Company was the beneficiary of an express trust, and the collection was made for its benefit by the receiver, but the receiver failed to remit the proceeds of said collection; that said funds had a distinctive identity, and that said check given by said Epstein added to the funds and property of the bank to the full extent of said check, and interveners prayed for preference.

An answer to said interveners was filed, denying all the material allegations of the intervention.

The following stipulation was introduced in evidence: "It is agreed and stipulated that this controversy may be tried upon the intervention, the answer thereto and upon the following statements of facts:

"In the fall of 1929 D. S. Clark was appointed receiver in the case of the *Kansas City Life Insurance Company* v. *Jewel Realty Company* in connection with a foreclosure of a mortgage of the Kansas City Life Insurance Company given by the Jewel Realty Company, and among the receiver's duties was the renting of the plantation known as Sunnyside. Said Clark, with the approval of the court, rented the property to Sam Epstein and took Epstein's note for five thousand and no/100 ($5,000) dollars, due on or before December 1, 1930. That on

November 15, 1930, the note being in the hands of D. S. Clark, receiver, Sam Epstein, the maker of the note, at twelve o'clock on said day, gave his check to D. S. Clark, as receiver, drawn on the Chicot Trust Company, in the sum of five thousand and no/100 ($5,000) dollars [who] deposited the five thousand and no/100 ($5,000) dollars in said Chicot Trust Company to his account as receiver.

"That the Chicot Trust Company did no business as a banking institution after that day; that it suspended on the 17th day of November for five days, and finally closed on November 24, 1930. That the note belonged to the Kansas City Life Insurance Company, who had become the owner of the plantation by purchase at the commissioner's sale in April, 1930, but the receiver had never turned the note over to the life insurance company.

"That there was never a check issued by the receiver against his account, and he had no chance to apply to court for order of distribution before bank failed. That the Kansas City Life Insurance Company never received anything from receiver on the account of said payment by Epstein to the receiver. That Epstein was on the receiver's bond, which bond was fixed at the sum of one thousand dollars.

"The interveners claim a preference and priority on said five thousand dollars ($5,000) under the pleadings and this stipulation, but the bank commissioner and liquidation agent deny that the Kansas City Life or D. S. Clark have any prior claim, and that the claim ought to be allowed only as a common claim in favor of the Kansas City Life Insurance Company."

There was no other evidence introduced.

A decree was entered denying the claim as a preferred claim, and allowing the $5,000 as a common claim to be paid *pro rata* out of the assets of the trust company.

The court held that Clark, as receiver, had no interest, and that the dividends should be paid to the appellant.

This appeal is prosecuted to reverse said decree,

The only question involved in this case is whether the appellant has a prior claim and should therefore be paid in full. The appellant argues that the priority, if any, is fixed by two principles of law: first, that funds in the hands of a receiver are trust funds, and second, that, by the provisions of act 107 of the Acts of 1927, it is entitled to a preference.

It was alleged that the Kansas City Life Insurance Company was the beneficiary of an express trust. In order to constitute an express trust, there must be some act on the part of the trustee expressive of an intent to create a trust and to make a designated party trustee. Express trusts are created by the direct and positive acts of the parties manifested by some instrument in writing. *Arnold* v. *Stephens,* 173 Ark. 205, 296 S. W. 24; *McCoy* v. *McCoy,* 30 Okla. 379, 121 Pac. 176, Ann. Cas. 1913C, 146; *Jones* v. *Byrne,* 149 Fed. 457; Perry on Trusts, vol. 1, § 24.

There was no trust created here in any way. The receiver, Clark, deposited the check in the bank, and it was immediately paid in the ordinary way and in the regular course of business. There was nothing done by the parties to create a trust.

Appellant is not entitled to a preference under act 107 of the Acts of 1927. That act provides that all creditors are classified either as secured creditors, prior creditors, or general creditors. There is no claim that appellant was a secured creditor, but it claims to be a prior creditor.

A prior creditor, under act 107 of the Acts of 1927, may be such in several instances. The owner of a special deposit expressly made as such in said bank, evidenced in writing, signed by said bank at the time thereof, and which it was not permitted to use in the course of its regular business, would be a prior creditor. This was not a special deposit in any sense, and was not evidenced by any writing signed by the bank.

We have already shown that it is not the beneficiary of an express trust. It may be a prior creditor where it is the owner of the proceeds of a collection made by the

bank and not remitted by it. No collection was made by the bank.

What is meant in the Acts of 1927 by "owner of the proceeds of collection" is a collection made by the bank from some other person, where the bank receives drafts, checks, notes, or other obligations for collection and makes the collection and does not remit it to the owner.

A bank receiving a draft for collection merely is the agent of the remitter, drawer, or forwarding bank and takes no title to the paper or proceeds when collected, but holds same in trust for remitting bank. *Taylor* v. *Corning Bank & Trust Co.,* 183 Ark. 757, 38 S. W. (2d) 557.

There is no evidence in this case that a trust was created. The burden of proving the existence of a trust rests on the person asserting it. *Quattlebaum* v. *Hendrick,* 179 Ark. 494, 16 S. W. (2d) 591.

This court said: "The deposit of the funds of the improvement districts, taxes collected on the benefits assessed, although they were trust funds so far as the official collecting and depositing them is concerned, and known by the bank to be such, did not become special deposits in the absence of the written agreement by the bank making them such at the time of their deposit, and the deposit was a general one under the law, the owner or creditor standing upon the same footing as other general creditors entitled to no preference or priority of payment." *Taylor* v. *Street Imp. Dist. No. 343,* 183 Ark. 524, 37 S. W. (2d) 84.

A deposit of public funds in a bank constitutes a general deposit as well as the relationship of a debtor and creditor between the bank and the beneficial depositor. *Taylor* v. *Whaley,* 183 Ark. 598, 37 S. W. (2d) 702.

The deposit made by Clark, the receiver, was a general deposit. No trust was created, and the appellant was not entitled to any preference.

The decree is affirmed.