WASSON, BANK COMMISSIONER *v.* PLEDGER.

4-4349

Opinion delivered July 13, 1936.

*Sam Levine,* for appellant.

*Coleman & Gantt,* for appellees.

MEHAFFY, J. This suit was begun by appellees in the Jefferson Chancery Court asking for judgment against the appellant, Marion Wasson, as Bank Com-

missioner of the State of Arkansas in charge of the property and affairs of the Cotton Belt Bank & Trust Company and the National Bank of Commerce of Pine Bluff for $13,850.91 with interest. They asked that it be adjudged a preferred claim entitled to priority, and that it be paid in full before other claims are paid out of the assets of the Cotton Belt Bank & Trust Company.

On May 6, 1932, the county board of education of Jefferson county adopted a resolution designating the three banks of Jefferson county as depositories for the school funds of Jefferson county. On May 11, 1932, the cashier of the Cotton Belt Bank & Trust Company wrote the following letter to the treasurer of Jefferson county.

"Mr. A. C. Pledger, County Treas.,

"Pine Bluff, Arkansas.

"Dear Mr. Pledger:

"We have been informed that the county board of education of Jefferson County on May 6, 1932, adopted a resolution designating all of the banks of Jefferson County as legal depositories of the common school funds of the county.

"Under the provisions of section 74 of the 1931 Edition of the School Laws of Arkansas, we accept the deposits of any school funds made by you as treasurer with us as a preferred deposit.

"Yours truly,

"(Signed) Wendell D. Lee, Cashier."

The appellant filed a response to appellee's petition denying the allegations in said petition, and alleging that § 74 of act 169 of the Acts of the General Assembly of the State of Arkansas for 1931, was unconstitutional; that the county board of education was without authority to name a depository, and, if it had authority, it did not properly designate the Cotton Belt Bank & Trust Company as the depository for school funds; that if the board of education had authority, and properly designated said bank, such designation was of no effect after the term of the particular county board then functioning, and after the expiration of the term of office of the treasurer, and the term of office of the county judge; that

Wendell Lee, cashier, had no authority, without the consent of the officials of the bank, to create a preferred deposit; that no request was made of the bank under § 74 above mentioned, for bonds of the character specified, nor a surety bond; that the bank at the time was in position to deposit bonds of the character required, and was in position to obtain a surety bond; that if the deposit was so made as to become a preferred deposit, the appellees have waived the preference by failing to proceed against the Cotton Belt Bank & Trust Company or the State Bank Commissioner, at the time said bank was placed on a restrictive basis as to deposits, and by accepting 50 per cent. of the deposits April 4, 1934; that the bank did not treat the school deposits as a preferred deposit, but handled them in the same manner that other general deposits of the bank were handled.

The following agreed statement of facts was introduced in evidence: "It is hereby stipulated and agreed by and between the parties hereto that upon the hearing of the petition of A. C. Pledger, the treasurer of Jefferson county, Arkansas, and R. H. Williams, the county judge of Jefferson county, Arkansas, which was filed herein on the 8th day of February, 1935, the following facts shall be considered as having been duly introduced in evidence and proved in this cause, and shall be so taken and acted upon by the court in rendering judgment on the said petition without further proof of said facts, to-wit:

"That the petitioner, A. C. Pledger, is now and has been at all times since the first day of January, 1931, the duly elected, qualified and acting treasurer of Jefferson County, Arkansas; that the term of office as such treasurer which he was serving on the 11th day of May, 1932, expired December 31, 1932; that he entered upon a new term of office on the first day of January, 1933, which expired December 31, 1934, and that he entered upon another new term of office on the first day of January, 1935, which will expire December 31, 1936.

"That the petitioner, R. H. Williams, is now and has been at all times since prior to the first day of January, 1931, the duly elected, qualified and acting county judge

of Jefferson County, Arkansas, serving as such for the several successive terms as prescribed by law during that time.

"That on the 6th day of May, 1932, the duly elected, qualified and acting county board of education of Jefferson County, Arkansas, adopted a resolution designating all the banks of Jefferson County as depositories for school funds of Jefferson County and delivered a copy of the said resolution to the petitioner A. C. Pledger as county treasurer. A copy of the said resolution as adopted by the said county board of education and delivered to the said petitioner is attached hereto, marked exhibit A, and made a part of this agreed statement of facts.

"That at the time of the adoption of the said resolution T. W. Moore was the president, and Mrs. Merlin Moore was the acting secretary of the said county board of education.

"That on the 6th day of May, 1932, and thereafter until the 10th day of March, 1934, the Cotton Belt Bank & Trust Company was a bank duly chartered by the State of Arkansas and engaged in business as a bank in the city of Pine Bluff, Jefferson County, Arkansas, and that Wendell D. Lee was its duly elected and acting cashier.

"That on the 11th day of May, 1932, Wendell D. Lee, as cashier of the said Cotton Belt Bank & Trust Company, wrote and delivered to the petitioner, A. C. Pledger, as treasurer of Jefferson County, Arkansas, a writing which is attached hereto, marked exhibit B, and made a part of this agreed statement of facts.

"That upon the receipt of said writing which is made exhibit B hereto, the petitioner, A. C. Pledger, as treasurer of Jefferson County, Arkansas, opened a new account in the Cotton Belt Bank & Trust Company as 'common school fund of Jefferson County,' and transferred to said account the amount of school funds which had theretofore been deposited in said bank to the credit of A. C. Pledger, county treasurer, and thereafter the said petitioner made deposits of school funds to said new account from time to time. On December 31, 1932, there

was deposited in the Cotton Belt Bank & Trust Company in the said common school fund of Jefferson County, a balance of thirty-two thousand, two hundred and eighteen and 28/100 dollars ($32,218.28).

"That a statement of the amounts deposited to and withdrawn from the said common school fund of Jefferson County in the said Cotton Belt Bank & Trust Company from December 31, 1932, to February 28, 1933, when the said bank was placed under restriction is as follows, to-wit:" (Tables of figures omitted).

"That on the 28th day of February, 1933, the said Cotton Belt Bank & Trust Company was placed under restriction by the Bank Commissioner of the State of Arkansas, and thereafter only five per cent. of the amounts on deposit in said bank or the sum of $15, whichever was the larger amount, was permitted to be withdrawn.

"That on the 10th day of March, 1934, the said Cotton Belt Bank & Trust Company was taken in charge by the Bank Commissioner of the State of Arkansas for liquidation as an insolvent bank, and is now being liquidated by the said Bank Commissioner, through J. E. Williams, Special Deputy Bank Commissioner, under the supervision of the Jefferson Chancery Court in this proceeding.

"That at the time the said Cotton Belt Bank & Trust Company was closed by the State Bank Commissioner, the petitioner, A. C. Pledger, as treasurer of Jefferson County, Arkansas, had on deposit in the said bank school funds in the amount of $27,701.81.

"That under a plan or reorganization approved by the Comptroller of the Currency and Bank Commissioner of the State of Arkansas, one-half of all amounts on deposit in the Cotton Belt Bank & Trust Company which were under restriction was paid by the National Bank of Commerce of Pine Bluff, which took over a portion of the assets of the said Cotton Belt Bank & Trust Company, and began business as a national bank in the place formerly occupied by the said Cotton Belt Bank & Trust Company. Pursuant to the said arrangement, the petitioner, A. C. Pledger, as such treasurer received $13,-

850.90, representing one-half of the restricted deposit to the credit of Common School Fund of Jefferson County and gave his receipt therefor as follows, to-wit:

"Common School Fund of Jefferson County,

"Pine Bluff, Ark., April 4, 1934.

"RECEIVED OF NATIONAL BANK OF COMMERCE OF PINE BLUFF (OF PINE BLUFF, ARKANSAS) THE SUM OF THIRTEEN THOUSAND AND EIGHT HUNDRED FIFTY AND 90/100 DOLLARS ($13,850.90) as EVIDENCED BY DEPOSIT SLIP, IN SUCH AMOUNT, OF EVEN DATE HEREWITH REPRESENTING THE DEPOSIT OF SUCH SUM TO MY CREDIT IN SAID BANK.

"This payment represents 50 per cent. restricted balance of undersigned in Cotton Belt Bank & Trust Company.

"The undersigned hereby acknowledges that the funds paid to the undersigned, as evidenced by this receipt, have been paid from a trust account established (for the benefit of creditors of Cotton Belt Bank & Trust Co., of Pine Bluff, Ark.) with National Bank of Commerce of Pine Bluff, pursuant to plan of reorganization of Cotton Belt Bank & Trust Co. approved by the Comptroller of the Currency and the Bank Commissioner of the State of Arkansas, and also pursuant to contract (made in furtherance of such plan) between Cotton Belt Bank & Trust Co., the Bank Commissioner and National Bank of Commerce of Pine Bluff, a copy of which contract and a written statement of which plan are on file with the Bank Commissioner of Arkansas, and with the Comptroller of Currency at Washington, D. C. And the undersigned, in consideration of the payment to him (in the manner above acknowledged) of the sum represented by this receipt, hereby assents to the plan or reorganization aforesaid, and to all provisions of said reorganization contract, and also acknowledges that he is a direct beneficiary under a loan, mentioned in said contract and contemplated by such plan, made to Cotton Belt Bank & Trust Company, by Reconstruction Finance Corporation, and he hereby approves the procurement of such loan

and the pledge and mortgage of assets made to secure the payment thereof. Provided that the undersigned does not waive any rights which he may have to claim that the deposit in the Cotton Belt Bank & Trust Company is a preferred deposit.

"Common School Fund of Jefferson County,

"By A. C. Pledger, Treas.

"WITNESS: E. W. Alexander."

"That the balance of $13,850.91 of the said deposit to the credit of Common School Fund of Jefferson County remaining unpaid belongs to school districts in Jefferson County, Arkansas, and school funds as follows, to-wit:" (Table of figures omitted).

"That when the Bank Commissioner of the State of Arkansas took charge of the property and affairs of the said Cotton Belt Bank & Trust Company for liquidation on the 10th day of March, 1934, a statement of the assets and liabilities of the said bank as shown by the inventory filed by the said Bank Commissioner in this matter was as follows:" (Inventory of assets of Cotton Belt Bank & Trust Company omitted.)

(Comparative statement of assets and liabilities of Cotton Belt Bank & Trust Company omitted.)

"That during the time hereinbefore mentioned, no bank, banker or trust company made a proposition or bid to become the depository of the public funds of Jefferson County, Arkansas; and no county depository was ever selected or designated by the county court or the county judge of said county.

"That prior to the filing of the said petition herein the county court of Jefferson County, Arkansas, on the 8th day of February, 1935, made and entered an order authorizing and directing the petitioners herein to act for said court in this matter. A copy of the said order, so made and entered, is attached hereto, marked Exhibit 'C' and made a part of this agreed statement of facts.

"Following the making of the said order of the county court and prior to the filing of the said petition herein, the said petitioners made, presented to and filed with the said Special Deputy Bank Commissioner in

charge of the property and affairs of the said Cotton Belt Bank & Trust Company proof of the said claim in the sum of $13,850.91 for said school funds as a preferred deposit entitled to priority of payment. A copy of the said proof of claim so filed is attached hereto, marked Exhibit 'D' and made a part of this agreed statement of facts.

"That no part of the said balance of $13,850.91 has been paid."

After the introduction of other evidence the court entered a decree finding the issues in favor of the claimants and that the claim for school funds on deposit in the Cotton Belt Bank & Trust Company in the amount of $13,850.91 is a preferred claim against the bank and should be paid in full before other claims for deposits are paid. The court found in favor of the National Bank of Commerce of Pine Bluff and dismissed the petition as to it.

Appellant first contends that there was no actual designation of a depository and that the alleged designating authority had ceased to exist before any action accrued to the county. There were but three banks in Jefferson county, and the Board of Education adopted the resolution above set out designating the three. We know of no reason why they could not designate all three banks as depositories, and the Cotton Belt Bank & Trust Company, through its cashier, accepted the deposit as a preferred claim under § 74 of act 169 of 1931.

Section 74 of said act reads as follows: "All general deposits of school funds in banks shall be secured by bonds of the United States, or bonds of the State of Arkansas, or by bonds of a political subdivision thereof which has never defaulted on any of its obligations, in an amount at least equal to the amount of such deposit, or by a bond executed by a surety company authorized to do business in the State of Arkansas; such surety on such bond to be approved by the Commissioner of Education. Provided that if the bank selected by the school board as a depository of its funds shall be unable to secure such school deposit as herein set out, it shall be

authorized to accept said funds as preferred deposit, and in event of insolvency such preferred deposit shall be paid in full before other bank deposits are paid.''

It is argued that it was clearly intended that the designating authority should exercise judgment and discretion in the selection of the depository, and that it is patent from the evidence that the board of education made no effort to ascertain anything about the condition of the bank or its ability to secure the fund by deposit of qualified bonds. We find nothing in the evidence that indicates that the board did not make an effort and did not ascertain the condition of all three banks in Jefferson county, and we think the evidence clearly shows that the bank could not have furnished bonds and could not have made a surety bond.

It is contended, however, that the intention of § 74 was to authorize the school officials under the circumstances indicated to deposit their funds as a special deposit or as a trust deposit to enable them to claim a preference under the provisions of act 107 of the Acts of 1927. That act defines a prior creditor to be the owner of a special deposit, expressly made as such in said bank, evidenced by a writing signed by said bank at the time thereof, and which it was not permitted to use in the course of its regular business, the beneficiary of an express trust, as distinguished from a constructive trust, a resulting trust, or a trust *ex maleficio,* of which the said bank was trustee and which was evidenced by writing signed by the said bank at the time thereof.

The cashier, in his letter, specifically stated that the deposit was accepted under the provisions of § 74, and would be treated as a preferred deposit. This was at least a substantial compliance with the law, and the law existing at the time became a part of the contract.

It is next contended by appellant that the letter of the cashier relied on as establishing their right of priority did not meet the requirements of the statute, and it is argued that the officials of a going bank do not have the power to specify that in the event of insolvency the creditor will be given preference over other creditors.

Appellant calls attention to *Boone County Board of Education* v. *Taylor,* 185 Ark. 869, 50 S. W. (2d) 241. In that case it was held that the two acts, that is, act 169 of 1931 and the act of 1927, should be construed together, and that construing these acts together, the Legislature evidently meant that in order to accept school money as a preferred deposit, the agreement must be in writing. This agreement was in writing.

Appellant next calls attention to *Ford* v. *State,* 186 Ark. 1197, 53 S. W. (2d) 603. This case held that the agreement must be in writing.

Attention is next called to *Taylor* v. *Gregory Spec. Sch. Dist.,* 187 Ark. 110, 58 S. W. (2d) 420. This case, also, held that the agreement must be in writing. In fact, all of our decisions on the question are to the effect that act 169 of 1931 and the act of 1927 must be construed together; but we have never held that any particular form of writing was necessary. The preferred deposit cannot be created by oral agreement; it must be in writing. But it is contended that the writing is insufficient because it does not provide that the bank will accept the school funds as a special deposit. We do not think the written agreement can be construed to mean anything else.

It is next contended that there is no evidence that the deposit in controversy was accepted as a special deposit. Whether the bank handled the special deposit properly or improperly is immaterial. It accepted it under the law, which became a part of the contract, and accepted it as a preferred deposit.

Attention is called to the evidence of Mr. Hogg, vice-president. He testified that on May 10 the account was split on the books, part of it being carried as Common School Fund of Jefferson county, and the balance continuing under the name of A. C. Pledger, county treasurer. As a matter of fact the evidence conclusively shows that the treasurer deposited this money under the written agreement that it would be a preferred deposit, and the funds were thereupon immediately separated, and the school funds deposited under the agreement of the bank, thereby becoming a preferred deposit.

It is also contended that it is doubtful whether the cashier had authority to write the letter. ''The cashier has greater inherent powers than any other officer of the corporation, and is ordinarily the active financial manager and agent of the bank. He is the agent of the bank and not of the directors. His acts, within his official sphere, are binding on the bank, and those who deal with him are presumed to know the extent of his general power, although a limitation of his general authority is not binding on those who are not cognizant thereof.'' 7 C. J. 549, § 160; *James* v. *Board of Commissioners,* 173 Ark. 517, 292 S. W. 983; *Wasson* v. *Treece,* 189 Ark. 728, 75 S. W. (2d) 71.

It is next contended that the claimant must identify his funds, and to support this contention, appellant cites and relies on *Rainwater* v. *Wildman,* 172 Ark. 521, 289 S. W. 488. In that case the court said: ''The equitable doctrine that, as between creditors, equality is equity, admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears in addition, there is some specific recognized equity founded on some agreement, or the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment.''

In the instant case there is the specific recognized equity founded on the agreement. The agreement is that the school funds shall be a preferred deposit. The Legislature had a right to enact this law, and it in no way impairs the obligation of a contract. The statute giving preferences was enacted in 1927. That statute became a part of the contract of every depositor.

It is contended that there was no effort made to obtain security. The evidence shows that the county treasurer of Jefferson county told Mr. Young that he wanted the deposit secured. He talked with Mr. Young a number of times. Mr. Young was a general utility man of the bank, and he testified that Mr. Pledger talked

to him, and regarded him as the agent of the bank. Young said that as the banking situation grew worse and worse, Pledger became more and more importunate. He became so importunate that he almost threatened to withdraw, if the funds were not secured. Young, also, said that any bonds that the bank had, it would have considered it impolitic to put them up to secure the account. Young also testified that before the letter of the cashier was written it was discussed with Mr. Hogg, the vice-president, and possibly with Mr. Handley, the president, and the letter was written to make a secured claim of the common school fund.

Our conclusion is that this was a preferred deposit, and should be paid before the payment of any other deposits. The decree of the chancery court is, therefore, affirmed.