HILL v. MILES.

Opinion delivered July 15, 1907.

INSOLVENT BANK—TRUST FUNDS—PREFERENCE.—The mere fact that an in-
solvent bank owes one for trust funds does not entitle such creditor
to a preference, to obtain which he must show that the receiver or
person having charge of the assets of the insolvent bank has in his
hands some of the trust funds or property purchased by such
funds or into which such funds have been changed or invested.

Appeal from Union Chancery Court; *R. L. Floyd*, Special
Chancellor; affirmed.

*Gaughan & Sifford* and *Bunn & Patterson*, for appellant.

The funds deposited were *trust funds* and a *special* deposit.
5 Ark. 267; 36 Fed. 239; 137 U. S. 411; 52 Fed. 59; 104 U. S.
54, 77; 137 *Id.* 411; 133 *Id.* 696.

*Moore, Smith &Moore*, for appellee.

1. The deposit was not a special deposit, but a general
deposit, and appellant was not entitled to a preference. 3 Am.
& Eng. Enc. of Law, 823-4; 5 Ark. 297; 88 Wis. 367; 52 Fed. 59.

2. But, if a special deposit, appellant has no preference
over general creditors. 52 Fed. 59; 137 U. S. 411; 104 *Id.* 54;
3 Maule & S. 575; 58 N. W. 383; 2 Pom. Eq. Jur. § §, 1051,
1058; 13 Ch. Div. 696; 151 Mass. 109.  To entitle a trust creditor
to preference, the trust funds or the proceeds thereof must be
capable of being traced to the assets in the hands of the receiver.
In this case there were no funds in the bank when it closed.
Authorities *supra*.

RIDDICK, J.  This is a proceeding in equity in the nature of
an intervening petition by Warren J. Hill, treasurer of Union
County, against W. J. Miles, receiver of the Bank of El Dorado,
to recover certain funds belonging to the county which had been
deposited by Hill in the bank before its failure, and to obtain
possession of certain school warrants held by the receiver.  The
evidence shows that the predecessor of Hill in the office of
county treasurer had kept the county funds in the Bank of El
Dorado, and that when Hill took possession he received the
funds in the bank and continued to keep the funds there.
Nothing was said between Hill and the cashier of the bank as
to how the funds should be kept, whether as a special deposit or

not.   The officers of the bank knew that Hill was treasurer of the county, and that the funds were public funds.  But the account was carried on the books of the bank in the name of W. J. Hill, and no distinction was made between his private funds and the public funds in his hands as county treasurer.   The account was carried in this way for several years up to July, 1903; the last deposit being made in that month.   The bank failed on the 24th day of August following.  In a suit in equity brought against the bank by Mrs. M. C. Wade a receiver was appointed. During the progress of the suit Hill filed a petition of intervention, alleging that at the time the bank closed its doors the bank was due him about $22,000 for public money, which he alleged was a trust fund and special deposit, and he asked that the court order the receiver to pay the same out of the funds of the bank in his hands.

Later Hill filed a second intervening petition, in which he alleged that the receiver had in his hands a number of warrants drawn by trustees of various school districts of the county, of the face value of $2930.55, which had been paid for by the receiver out of the public funds in his hands, and the petition asked that the receiver be required to turn over these warrants to him so that he might use them in his settlements with the districts that had issued them.

Upon the final hearing it was shown that there were no funds in the bank at the time it closed its doors, and Hill did not further prosecute his first petition to be paid the money deposited by him.   And the court held that he was not entitled to recover on the second petition, and dismissed the same.   From this judgment Hill appealed.

But the admission that the bank had no funds on hand at the time of its failure disposes of the second as well as the first intervening petition.   Even conceding that the funds deposited by the treasurer could be treated as a special deposit or trust funds which the bank had no right to mingle with its general assets, still it is not shown that any of these funds came into the hands of the receiver or were used by him to pay for the school warrants purchased by him after the bank's failure.   It seems that he bought these warrants without any order of the court; and if the warrants were purchased with the general funds in his

hands, they must take the place of the general funds. There is no proof whatever that any of the county funds were used to purchase them. We considered a question of this kind in the recent case of *Oswego Milling Co.* v. *Skillern,* 73 Ark. 324. In that case there was an effort to collect from the receiver a certain sum of money which the plaintiff claimed was a trust fund. In that case, quoting an expression of Sir George Jessel In re *Hallett's Estate,* we said: "If these trust funds went 'into the bag of money' held by the receiver, the court could compel him to take out an equal amount, and the general creditors would not be injured, for the balance left would be the same as if these trust funds had never been put in. But we must first know that the money went in before we order it taken out; otherwise, the rights of the general creditors may be prejudiced."

Now, in this case the county treasurer was depositing county funds with the Bank of El Dorado from time to time during several years up until about a month or six weeks before the bank failed. But evidently the bank was using these funds, and the evidence not only does not show that any of these funds went into the hands of the receiver, but it is admitted by the counsel for petitioner that it shows that at the time the bank closed its doors it had no funds of any kind on hand. It is not shown what became of these funds, and not shown that any of them came back into the hands of the receiver, and therefore not shown that the school warrants in question were purchased with such funds. If these warrants were paid for out of the funds of the bank, they were paid out of money collected by the receiver after he took possession. In the absence of any evidence as to where this money came from, the presumption would be that it came from the general assets of the bank in which all the creditors are equally interested. The contention that trust funds are a general lien on such assets superior to that of general creditors cannot be sustained. The mere fact that an insolvent bank owes one for trust funds does not entitle such creditor to a preference. To obtain a preference, he must show that the receiver or person having charge of the assets of the insolvent bank has in his hands some of the trust funds or property purchased by such funds or into which such funds have been changed or invested. *Oswego Milling Co.* v. *Skillern,* 73 Ark.

324; *Cavin* v. *Gleason,* 105 N. Y. 259; *Atkinson* v. *Rochester Printing Co.,* 114 N. Y. 169; *Little* v. *Chadwick,* 151 Mass. 109; In re *Hallett's Est.,* 13 Ch. Div. 696; *Philadelphia Nat. Bank* v. *Dowd,* 38 Fed. 172; 2 Am. & Eng. Decisions in Eq. 658, 659.

For the reasons stated we are of the opinion that the judgment in this case should be affirmed. It is so ordered.