· RAINWATER *v.* WILDMAN.

Opinion delivered January 10, 1927.

1.  TRUSTS—RIGHT TO TRACE TRUST FUNDS.—A *cestui que trust* who can trace trust funds to particular property may assert a right to that property and its proceeds, if they are traceable and are found in the hands of those who can assert no better right thereto.
2.  TRUSTS—RIGHT TO FOLLOW TRUST FUND.—The mere fact that an insolvent bank owes one for trust funds does not entitle such

creditor to a preference, to obtain which he must show that the receiver or person having charge of the assets of the insolvent bank has in his hands some of the trust funds or property purchased by such funds or into which such funds have been changed or invested.

3. BANKS AND BANKING—FOLLOWING TRUST FUNDS.—One who left notes with a bank for collection is not entitled to a preference over other creditors out of the assets of the bank upon its subsequent insolvency, in the absence of proof that the notes or a fund derived therefrom was in the bank when it went into the hands of the Bank Commissioner.

Appeal from Franklin Chancery Court, Ozark District; *J. V. Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

This is a proceeding in equity by Clara Wildman against Loid Rainwater, State Bank Commissioner, and, as such, receiver of the People's Bank of Ozark, Arkansas, to recover notes belonging to the plaintiff, or the proceeds thereof, or that the plaintiff's claim be decreed to be a preferred one. The defendant admitted the amount of plaintiff's claim to be correct, but defended the suit on the ground that, under the facts, the plaintiff's claim was not entitled to preference over the claims of the general creditors of the insolvent bank.

According to the evidence of Mrs. Clara Wildman, she had in the People's Bank in the year 1923 notes the principal of which amounted to $6,100. These notes were placed in an envelope and were left with the bank for collection. Subsequently the cashier of the bank collected these notes and substituted other notes for like amounts in the place of them. After the bank closed its doors she made a demand for the notes or the proceeds thereof. Said notes were not returned to her, and she has not received any part of the proceeds thereof.

According to the testimony of the cashier of the bank, he first took the money of the plaintiff and purchased notes with it. These notes were made payable to her, and were placed in an envelope showing that they were her property. Subsequently these notes were paid,

and the cashier invested the proceeds in the purchase of other notes, which were also payable to the plaintiff. When these notes were collected, the cashier of the bank invested the proceeds in various smaller notes which were payable to the order of the People's Bank. These notes were also placed in an envelope with the plaintiff's name on it.

The bank closed its doors on the 19th day of January, 1926, and Loid Rainwater, the State Bank Commissioner, took possession of the property and assets of the bank for the purpose of settling its affairs. The notes which were set apart by the cashier as the property of the plaintiff are not shown to have gone into the hands of the State Bank Commissioner. In other words, the evidence does not disclose what became of these notes. It only shows that an effort was made to find them after the bank closed its doors, but the plaintiff was unable to do so.

The evidence also reflects that the cashier of the bank was indicted in relation to his connection with the affairs of the bank, but the nature of the indictments is not shown.

The chancery court found the issues in favor of the plaintiff, and it was decreed that the plaintiff recover from the defendant the amount of her claim and that the same be declared a preferred claim over the general creditors of the insolvent bank. The case is here on appeal.

*Hill & Fitzhugh,* for appellant.

*D. L. Ford,* for appellee.

HART, J., (after stating the facts). It is the settled doctrine in this State that a *cestui que trust* who can trace trust funds into a particular property may assert a right to that property and its proceeds, if the proceeds are traceable and are found in the hands of those who can assert no better right thereto.

In *Hill* v. *Miles,* 83 Ark. 487, 104 S. W. 199, the court held: "The mere fact that an insolvent bank owes one for trust funds does not entitle such creditor to a preference, to obtain which he must show that the receiver or person

having charge of the assets of the insolvent bank has in his hands some of the trust funds or property purchased by such funds or into which such funds have been changed or invested.''

In *Red Bud Realty Company* v. *South,* 96 Ark. 281, 131 S. W. 340, in discussing the subject, the court, said: "But, before such a trust arises, it is essential that the fund thus wrongfully appropriated and converted be traced to the acquisition of the new species of property or investment upon which it is sought to impress the trust. The misappropriated funds must be traced to and located in the changed form or species of property. It cannot be pursued and located in the general mass of the wrongdoer's property, because such wrongdoer has incurred indebtedness generally in the acquisition of the general mass of his property and has subsequently applied the misappropriated funds to the payment of his debts generally.''

The case of *Cavin* v. *Gleason,* 105 N. Y. 262, 11 N. E. 506, recognizes the rule and states the reason therefor in a clear and comprehensive way. It is there said:

"It is clear, we think, that, upon an accounting in bankruptcy or insolvency, a trust creditor is not entitled to a preference over general creditors of the insolvent merely on the ground of the nature of his claim; that is, that he is a trust creditor as distinguished from a general creditor. We know of no authority for such contention. The equitable doctrine that, as between creditors, equality is equity, admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears, in addition, that there is some specific recognized equity founded on some agreement, or the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment. If it appears that trust property specifically belonging to

the trust is included in the assets, the court doubtless may order it to be restored to the trust. So, also, if it appears that trust property has been wrongfully converted by the trustee, and constitutes, although in a changed form, a part of the assets, it would seem to be equitable, and in accordance with equitable principles, that the things into which the trust property has been changed should, if required, be set apart for the trust, or, if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property or funds, or proceeds of the trust property, entering into and constituting a part of the assets. This rule simply asserts the right of the trust owner to his own property.

"But it is the general rule, as well in a court of equity as in a court of law, that, in order to follow trust funds and subject them to the operation of the trust, they must be identified. A court of equity, in pursuing the inquiry and in administering relief, is less hampered by technical difficulties than a court of law; and it may be sufficient, to entitle a party to equitable preference in the distribution of a fund in insolvency, that it appears that the fund or property of the insolvent remaining for distribution includes the proceeds of the trust estate, although it may be impossible to point out the precise thing in which the trust fund has been invested, or the precise time when the conversion took place. The authorities require at least this degree of distinctness in the proof before preference can be awarded."

It follows that Mrs. Wildman is not entitled to a preference over the other creditors of the insolvent bank out of property or assets to which no part of the trust fund or proceeds thereof is traceable. While courts will go as far as they can in tracing the trust fund, where such fund cannot be traced the equitable right of the *cestui que trust* to follow it fails.

The facts proved in the case at bar fall short of establishing a preference within the rule above

announced.   The trust fund was not traced into the assets in the hands of the receiver.   While it is clear that the trust fund has been lost by the act of the trustee bank or its cashier, the facts do not show the fund to be specifically in the hands of the trustee or the receiver, nor is it represented by other notes or property into which it has been converted and traced.   The trust fund is not shown to have been used by the bank in the purchase of a specific property, which is now in the hands of the receiver, or to have been deposited so that the notes purchased may be traced as derived from the trust fund.

The view most favorable to Mrs. Wildman, under the facts, that could be taken is that the cashier of the bank collected the notes which were in the possession of the bank, for her, and then loaned the proceeds to various other persons in smaller amounts and took their notes therefor.   These notes were made payable to the bank and placed in an envelope where the cashier usually kept the notes payable to Mrs. Wildman.   The evidence does not show what became of these notes.   They are not traced into the hands of the receiver nor identified as being in his possession.   They may have been placed by the cashier in the general assets of the bank before it went into the hands of the receiver.   The cashier may have collected the notes and used the proceeds for purposes of his own.   The proceeds may have been squandered, wasted, or lost by him.   It is sufficient to say that the fund is not traced or identified as being in the hands of the receiver as a part of the assets of the insolvent bank.

The result of our views is that the court should have held that Mrs. Wildman was not entitled to a preference, and it should have allowed her claim as a general creditor of the insolvent bank.   It follows that the decree must be reversed, and the cause will be remanded with direction to the chancery court to allow the claim of Mrs. Wildman as a general creditor of the insolvent bank, and for other proceedings in accordance with the principles of equity and not inconsistent with this opinion.