THOMAS *v.* WASSON.

4-4068

Opinion delivered December 9, 1935.

*Ernest Briner,* for appellant.

*McDaniel, McCray & Crow* and *Trieber & Lasley,* for appellee.

BUTLER, J. On January 3, 1933, the Citizens' Bank of Benton undertook to accept deposits of Albert Thomas as treasurer of Saline County under a written agreement by which it was stipulated "that all public funds deposited in the Citizens' Bank, Benton, Arkansas, by the said Albert Thomas, as treasurer of Saline County, Arkansas, where deposit receipts are marked 'Special,' shall be a preferred claim and an express trust, and Citizens' Bank becomes trustee, and said deposits shall at all times be considered a prior and preferred claim in said bank." Thereafter, and to February 28, 1933, there was deposited by the appellant, Thomas, $15,398.06. The bank functioned in the ordinary way until February 28, 1933, when it restricted the withdrawal of deposits. By this action five per cent. of the public funds of Saline County, amounting to the sum of $777.08, was subject to withdrawal, and the remainder of the deposit in the sum of $14,620.98 was frozen. This action of the bank was validated by § 1 of act No. 96 of the Acts of 1933. From February 28th the bank operated on the "restricted basis" until March 2, 1933. During this interval, Thomas, as

treasurer, deposited $54.75, and there were presented to the bank on February 28th two of his checks drawn February 27th on the deposit of the public funds, these checks aggregating the sum of $768.60, being paid and charged against the unrestricted balance of $777.08 and leaving a balance of $8.48. On March 2d, following, the bank closed its doors and was taken over by the Bank Commissioner for liquidation as an insolvent bank on the 22d of that month. Between these dates the cashier of the bank absconded, taking with him approximately $6,-344.54 of the bank's cash, leaving $447.05, which was the only cash coming into the hands of the Bank Commissioner when he took possession. After the Commissioner took over the bank, the defaulting cashier sent his wife various money orders, amounting to the sum of $500, which were delivered immediately by her to the Bank Commissioner. Afterward the Commissioner received from the surety on the cashier's fidelity bond the sum of $6,206.47.

During the process of liquidation appellant filed a petition in the Saline Chancery Court which in effect asked that $4,265.37 of Saline County warrants, owned by the bank and for which the county was liable, be offset against the restricted deposit, and the warrants delivered to the appellant as county treasurer. As a further offset, he prayed that three personal notes of his own for $237, $200 and $686.25, respectively, be allowed against the said deposit; also, that the two checks aggregating $768.60 presented February 28, 1933, be charged against the restricted deposit, and the unrestricted deposit be credited with this sum. Finally, it was prayed that the restricted deposit be declared a prior and preferred claim upon the sums remaining in the bank as augmented by the amount paid by the surety on the cashier's bond and the $500 in money orders delivered to the Commissioner by the wife of the cashier.

The court granted so much of the prayer of the petition as related to the offset of the county warrants and two personal notes of Thomas amounting to the sum of $437, but refused to offset his personal note amounting to $686.25 for the reason that the same had been hypothe-

cated and delivered to secure a loan to the insolvent bank. With respect to the priority claim, the court restricted that to the amount of cash actually on hand in the insolvent bank when the Bank Commissioner took charge, and to the $54 deposit and the item of $8.48 of the unrestricted deposit.

The appeal questions the action of the lower court in refusing to grant the prayer of the petition in its entirety. The appellee has prosecuted no cross-appeal, and therefore the action of the court allowing as offsets against the public funds on deposit two personal notes of the county treasurer is not before us. Certainly, however, the court properly refused to allow as an offset the personal note for $686.25. That note was not the property of the bank, but was in the hands of third persons who acquired it for value. There is no merit in appellant's contention that there was no evidence to establish this fact. The schedule filed by the liquidating agent disclosed this, and it appears not to have been disputed in the course of the proceeding.

The court also properly upheld the application of the two checks presented on February 28, 1933, at the time when the bank had gone on a restricted basis. To do otherwise would have been in plain contravention of the basis upon which withdrawals were restricted and would have created a preference in favor of the appellant. The amount subject to check was $777.08. Therefore, any checks tendered after the bank was on a restricted basis were necessarily payable from the unrestricted fund. The contention that the cashier agreed that the checks could be drawn on the restricted balance can have no effect, as this promise would serve to nullify the restrictions on the withdrawals validated by § 1, act 96, *supra*.

Doubt is expressed by counsel for appellee of the sufficiency of the agreement of January 3, 1933, as interpreted by the conduct of the parties to create such a trust relationship as would entitle appellant to any priority. This position seems not to have been advanced in the court below, and, as no cross-appeal has been taken by the appellee, that question has been settled by the

decree. Therefore the status of appellant's deposit must be determined on general principles as modified by § 1 of act No. 107 of the Acts of 1927 (§ 717h, Castle's Supp. to Crawford & Moses' Digest), and by act No. 96 of the Acts of 1933.

Section 1 of act 107, *supra,* provides as follows: "All prior creditors as in this section hereinabove defined, except only employees, laborers and clerks of said bank and the Commissioner and said prior creditors under an act of Congress, who shall be paid in full out of any assets of said bank available therefor after the payment of the expenses of administration, shall have such priority to the extent that they respectively may specifically identify their property in its original or traceable form into the hands of the Commissioner, and, if unable so to identify such property, to the extent that the assets in the hands of the Commissioner, in the form of the lowest amount of cash on hand, exclusive of deposits in other banks and all other assets, remaining in said bank continuously after their said respective priorities arose, were necessarily increased by such property * * *, and, if such cash on hand is not sufficient to pay all such prior creditors in full, the same shall be prorated among them. Beyond the extent of the priority of any such prior creditor respectively as aforesaid, and so far as his priority to such extent cannot be paid in full, but not otherwise, the said creditors shall be general creditors of said bank."

The general rule defining the right of a *cestui que trust* to follow trust property, or the proceeds thereof, has been stated thus: "As a general rule, if the property may be distinctly traced and identified, and superior rights of innocent third persons have not intervened, a *cestui que trust* may, in equity, follow and recover, or impress a trust on, trust funds or property which have been diverted, no matter what the form into which they have been converted nor into whose hands they have come. If it can be traced and identified, this rule applies, although the subject-matter of the trust consists of money. * * * The right to follow trust property in equity being based on the theory that a right of property still exists in the *cestui que trust,* the equitable right of recovery or

reclamation generally does not exist, or no trust or lien can be enforced, if the trust property cannot be identified, or traced into some specific fund or thing, which is sought to be charged, and into which the original trust property has gone in some form or other." 65 C. J., pages 963, 965, §§ 888, 889; *Rainwater* v. *Wildman,* 172 Ark. 521, 289 S. W. 488; *Redbud Realty Co.* v. *South,* 96 Ark. 281, 131 S. W. 340; *Hill* v. *Miles,* 83 Ark. 486, 104 S. W. 198. As illustrative of this rule, our court, in the case of *Oswego Milling Co.* v. *Skillern,* 73 Ark. 324, 84 S. W. 475, quotes an expression of Sir George Jessel in Re Hallett's Estate as follows: "If these trust funds went 'into the bag of money' held by the receiver, the court could compel him to take out an equal amount, and the general creditors would not be injured, for the balance left would be the same as if these trust funds had never been put in. But we must first know that the money went in before we order it taken out; otherwise the rights of the general creditors may be prejudiced."

The statute quoted, *supra,* extends the rule only to the extent that, where the fund "in its original or traceable form" cannot be identified, the trust shall, nevertheless, attach "to the extent * * * of the lowest amount of cash on hand * * * remaining in said bank continuously after their said respective priorities arose" where the assets of the bank were necessarily increased by said property.

The necessary effect of §§ 3 and 4 of act 96, 1933, is that, where a bank has begun to operate on a restricted basis, the fund out of which prior or preferred claims are to be paid is the cash on hand at that time, and that the priorities and the extent thereof of the depositors are to be determined by conditions at the time of the placing of restrictions on withdrawals. The applicable part of act 96, *supra,* to the question under consideration is found in §§ 3, 4 and 5, as follows:

"Sec. 3. In all instances in which any bank * * * has restricted the withdrawal of deposits or may hereafter restrict such withdrawals, the amount allowed to be withdrawn by a depositor under the terms of said restriction

\* \* \* shall, in the event of the Bank Commissioner taking charge of said bank, be classed as a prior claim, and, as such, shall be paid out of the assets of the bank of every nature owned by it at the date said restriction was imposed, and shall be paid before all other prior claims which are payable out of the said then owned assets, except (a) the claim of an employee, laborer or clerk of said bank; or (b) the Commissioner as to deposits made by him in said bank as a depository of moneys of another bank of which he has taken charge; or (c) a prior creditor who is such by virtue of an Act of Congress applicable to the said bank, as and to the extent in each such excepted instance as provided by law.

"Sec. 4. Such deposits so accepted (while the bank is on a restricted basis) shall either be held in cash in the vaults of the bank accepting such deposits, or shall be deposited, subject to withdrawal on demand, with another bank. \* \* \* Depositors and other contract creditors of the said bank who have become such since the imposing of a restriction on the withdrawal of deposits, and whose property has increased its cash assets, shall, respectively, to the extent of such increase, be prior creditors of said bank in the event the Bank Commissioner thereafter takes charge thereof, and as such shall be entitled to payment of their claims against the said bank out of the assets representing the deposits and other contract claims ahead of all other creditors of said bank.

"Sec. 5. All creditors \* \* \* who became such prior to the imposing of any restriction on the withdrawal of deposits shall have the same priorities, and to the same extent, as now provided by law, except as by this act otherwise provided."

From these provisions it will be seen that permissible withdrawals, in cases where the Bank Commissioner takes charge, become prior to all other prior claims and are to be paid first except as to certain classes of claims which are not involved in this action. The payment of the permissible withdrawals are guaranteed by "the then owned assets of the bank." The deposits made while a bank is on a restricted basis "shall either be held in cash

in the vaults of the bank accepting such deposits or shall be deposited, subject to withdrawal on demand, with another bank.''

As all the cash in the bank in question, at the time it closed its doors, was pledged to the payment of the withdrawal balances and to the payment of deposits made on and after February 28, 1933, it is questionable whether any of the cash on hand when the bank closed on March 2, 1933, could have been appropriated to the payment of prior claims arising and existing before February 28th, and, certainly, to no more than the cash on hand when the Commissioner took charge. The contention that the money paid by the surety and the $500 in money orders delivered to the Commissioner should be treated as money on hand when the Commissioner took charge and subject to the appellant's prior claim cannot be sustained. To do so would violate the rule quoted *supra* and the intent of § 1, act 104, *supra*. The amounts paid by the surety company and the wife of the cashier did not exist at the time the bank went on a restricted basis; they were the proceeds of choses in action. The appellant has been unable to trace any of the trust fund into these items, and is therefore not entitled to a preference in them. Applying the general rule, quoted *supra,* to insolvent bank, this court, in *Hill* v. *Miles, supra,* held (quoting headnote) : ''The mere fact that an insolvent bank owes one for trust funds does not entitle such creditor to a preference, to obtain which he must show that the receiver or person having charge of the assets of the insolvent bank has in his hands some of the trust funds or property purchased by such funds or into which such funds have been changed or invested.''

We are of the opinion that the trial court correctly applied this rule to the developed facts, and that its decree should be, and is, affirmed.