**Alice M. JOHNSON, Plaintiff,**

v.

**Clyde H. JOHNSON and Florene Vivian Johnson, Defendants.**

**Civ. A. No. 1362.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Oct. 3, 1957.

474

Hugh M. Bland, Paul E. Gutensohn, Fort Smith, Ark., Charles D. VanDyck, Jr., Chickasha, Okl., for plaintiff.

Dobbs, Pryor & Dobbs, Fort Smith, Ark., for defendants.

JOHN E. MILLER, District Judge.

### Statement

On August 27, 1957, this case was tried to the Court without a jury, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs from the parties. The briefs have been received and the Court, having considered the pleadings, evidence, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

1.

The plaintiff is a citizen of Oklahoma and resides in Oklahoma City. The defendant, Florene Vivian Johnson, is a citizen of the State of Arkansas and resides in the City of Fort Smith. The defendant, Clyde H. Johnson, at the time this action was commenced was a citizen of the State of Arkansas and was residing in the City of Fort Smith. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

2.

In view of the nature of this case the Court is of the opinion that it should first set out the pertinent facts in chronological order, and in so doing the defendant, Florene Vivian Johnson, will be referred to as Florene and the plaintiff, Alice Johnson, will be referred to as Alice or plaintiff.

(a) The defendants, Florene and Clyde H. Johnson, met in 1933 in their home town of Lebanon, Missouri, and dated each other for a period of approximately three years. In 1936 they were married when Florene was 19 years of age and Clyde H. Johnson was 25.

(b) The plaintiff, Alice, who had previously been married and divorced, was married to H. C. Gates in St. Louis, Missouri, in 1942. Before marrying Gates plaintiff had worked as a waitress.

Plaintiff is now 53 years of age.

(c) Plaintiff's husband, H. C. Gates, died in 1952, leaving the plaintiff an estate of approximately $50,000 in insurance, cash, and securities. Subsequent to Gates' death plaintiff lived with her sister in Healdton, Oklahoma, where she worked as a cashier in her sister's restaurant. During the same period of time the defendants, Florene and Clyde H. Johnson, were living in Chickasha, Oklahoma, where he was engaged in the wholesale tobacco and candy business.

(d) In November, 1953, plaintiff met the defendant, Clyde H. Johnson, at the

restaurant where she was working. She began dating him thinking he was a single man, and in the latter part of December, 1953, she made a trip with him to Portales, New Mexico, on his representation that he was going there to obtain a loan from his uncle.

He told her that the uncle would not make the loan and apparently they returned to Oklahoma. Before making this trip Clyde H. Johnson had taken plaintiff by his home in Chickasha, Oklahoma, and she had seen the inside of the house.

The following events set forth under (e) occurred in 1954:

(e) On January 2, plaintiff loaned Clyde H. Johnson the sum of $9,226.86, which he was to use to build up his business. He promised to pay her 2 percent interest, which was the same amount she was getting at the bank.

On January 4, Clyde H. Johnson deposited $8,000 of this money in the First National Bank of Alex, Oklahoma, retaining $1,226.80 in cash.

On February 8, Clyde H. Johnson withdrew $2,000 in cash from the First National Bank of Alex, Oklahoma.

In February or March, plaintiff first learned that Clyde H. Johnson was a married man, but he told her that he and his wife were not living together and he was getting a divorce.

On March 29, Clyde H. Johnson withdrew $6,000 in cash from the First National Bank of Alex, Oklahoma.

On April 2, Clyde H. Johnson filed suit for divorce against Florene in the Grady County District Court at Chickasha, Oklahoma.

On July 17, Clyde H. Johnson obtained a divorce from Florene and a property settlement was incorporated in the decree. Under the property settlement Clyde H. Johnson received the home and a GMC truck. Florene received all the furniture, a 1941 Chrysler automobile, and $2,400 cash to be paid in monthly installments.[1]

On July 30, plaintiff loaned Clyde H. Johnson the sum of $9,000.

In September, Florene moved to Fort Smith, Arkansas, where she lived with her brother, Verdon Bennett.[2]

On September 17, plaintiff loaned Clyde H. Johnson $9,000.

On October 15, Clyde H. Johnson deposited in his business account in the Oklahoma National Bank at Chickasha, Oklahoma, the sum of $16,724.51, of which amount $14,469 was in cash.

In December, Clyde H. Johnson paid Florene the sum of $2,000. Apparently this was a payment on the $2,400 he owed her under the divorce settlement.

Clyde H. Johnson induced plaintiff to convey to him her 1953 Chrysler automobile worth approximately $2,500. (Plaintiff testified that this conveyance occurred in December of 1954. Actually it may have occurred in December of 1955, since plaintiff and Clyde H. Johnson were not married until July 13, 1955.)

In 1955, the events herein set out in (f) occurred:

(f) During the year Florene was employed at a photo shop in Fort Smith, Arkansas, at a salary of $35 per week.

On March 20, plaintiff loaned Clyde H. Johnson $1,400.

On July 13, plaintiff and Clyde H. Johnson were married.

---

1. At the trial, over the objections of the plaintiff, Florene testified that she was to receive from Clyde H. Johnson the sum of $25,000 in addition to the 1941 Chrysler automobile and the sum of $2,400 mentioned in the property settlement incorporated in the divorce decree. In view of the conclusion reached by the Court, it is not necessary for the Court to determine whether such testimony by Florene was admissible.

2. Florene testified that she brought with her to Fort Smith $10,300 in currency in a large brown envelope which she gave to her brother for safekeeping; that she had saved that sum of money over a period of years. In view of the conclusion reached by the Court, it is unnecessary to determine whether she in truth and in fact had said sum of money.

On July 16, plaintiff loaned Clyde H. Johnson $6,000.

On July 18, Clyde H. Johnson deposited in his business account in the Oklahoma National Bank the sum of $6,403.-57, of which amount $6,312.30 was in cash.

In October, plaintiff loaned Clyde H. Johnson $3,000. Apparently this money was obtained by the sale of some stocks she owned. The $3,000 was to be used by Clyde H. Johnson to purchase furniture. It is not clear from the evidence what became of the $3,000, since plaintiff testified that she accompanied Clyde H. Johnson when the furniture was purchased and he paid for the furniture by check.

The furniture purchased by Clyde H. Johnson included some chairs, tables, mattress and springs, a maple dinette set, a Mathes air conditioner, 27-inch TV set, vacuum cleaner, gas range, Westinghouse laundromat, refrigerator, TV lamp, and a large urn.

On December 26, Clyde H. Johnson mailed a check to Florene in the amount of $715.

In 1956 the events set forth under (g) occurred.

(g) From January until September Florene was earning $35 per week.

On May 11, Clyde H. Johnson cashed a check for $2,200 on his account in the Oklahoma National Bank at Chickasha, Oklahoma.

On June 11, Clyde H. Johnson cashed a check on the same bank for $2,300.

On September 4, Clyde H. Johnson cashed a check on the same bank for $1,-100. On the same date Florene began working for Williams Motor Co. at a salary of $52 per week.

On September 14, Clyde H. Johnson cashed a check on the Oklahoma National Bank for $1,100.

In December, Clyde H. Johnson traded in the 1953 Chrysler he had obtained from plaintiff on a 1955 Dodge. There is no evidence as to the amount allowed Clyde H. Johnson for the Chrysler on the purchase price of the Dodge.

In 1957, the following events set out in (h) occurred:

(h) Around the first part of 1957 plaintiff made her first request that Clyde H. Johnson repay some of the money he had borrowed from her. It appears that prior to this time plaintiff had made no request or demand upon Clyde H. Johnson for repayment of any of the money.

In February, without plaintiff's knowledge or permission Clyde H. Johnson obtained plaintiff's diamond ring worth $1,000 and had it altered at Tuttle, Oklahoma. The ring has not been returned to plaintiff.

On February 4, Clyde H. Johnson cashed a check on the Oklahoma National Bank for $2,000.

During the period from February or March until the first part of May, on several occasions Clyde H. Johnson would meet Florene at Williams Motor Co. when she got off work. Sometime in March or April, Walter Phillips, Business Manager of Community Motors, an automobile agency in Fort Smith, Arkansas, met Clyde H. Johnson and Florene at a boat show and talked to them about the sale of an automobile. Subsequently, Clyde H. Johnson came back alone and had a further discussion about the purchase of a vehicle.

On March 2, Clyde H. Johnson cashed a check on the Oklahoma National Bank for $2,000.

On March 6, he cashed a check on the same bank for $2,000.

On March 21, Florene received a cashier's check from Clyde H. Johnson in the amount of $5,600.

On April 1, Clyde H. Johnson cashed a check on his account in the Oklahoma National Bank for $3,000.

On April 3, Florene deposited $7,500 in her account in the First National Bank of Fort Smith, Arkansas. She had received this money from Clyde H. Johnson.

On April 5, Clyde H. Johnson cashed a check on his Oklahoma National Bank Account for $2,000.

On the next day, April 6, Clyde H. Johnson sold his wholesale tobacco and candy business for $5,863.77; $3,663.77 was for his inventory; approximately $1,200 was for his truck; and approximately $1,000 was for other items.

On April 8, Clyde H. Johnson cashed a check on his Oklahoma National Bank account for $4,000.

On April 12, Florene entered into a contract to purchase the Cardinal Courts in Fort Smith, Arkansas, for the sum of $50,000. She agreed to pay $20,144.-19 in cash and to assume two loans on the property totaling $29,855.81. She deposited $2,500 as earnest money and also deposited $7,500 with the Victor Howard Co., Inc., to be credited on the purchase.

In April, E. B. Cole of Chickasha, Oklahoma, purchased Clyde H. Johnson's home in Chickasha for $8,000. Clyde H. Johnson made statements to Cole to the effect that he was planning to obtain a divorce from plaintiff and was planning to return to his first wife.

On April 30, Clyde H. Johnson took plaintiff to El Reno, Oklahoma, telling her that Florene was going to be over and he did not want to embarrass her. While plaintiff was in El Reno all the furniture except one or two pieces was shipped to Florene at the Cardinal Courts in Fort Smith. The furniture was stored in the Johnston Storage warehouse in Fort Smith, Arkansas, from May 3, 1957, until June 20, 1957, when it was delivered to Florene at the Cardinal Courts.

On May 6, E. B. Cole paid Clyde H. Johnson $185 for some drapes that were left in the house.

On May 9, Clyde H. Johnson and plaintiff arrived at her sister's home in Patterson, California, and the next day, May 10, Clyde H. Johnson went to Las Vegas, Nevada, alone.

On May 11, Clyde H. Johnson mailed a $600 postal money order to plaintiff. On the same day Florene ceased her employment with Williams Motor Co. in Fort Smith.

On May 13, Clyde H. Johnson telephoned· from Las Vegas to plaintiff in Patterson, California, telling her that he had lost all his money gambling, and was not coming back. He also told her that the $600 he sent to her was borrowed on the car.

Plaintiff stayed a few days in California and then returned to Oklahoma City where she has resided since that time.

On May 15, Florene and Clyde H. Johnson went to the Community Motors in Fort Smith, and a station wagon was purchased in the name of the Cardinal Courts. A 1954 Ford owned by Florene and the 1955 Dodge which was in the name of Clyde H. Johnson were traded in on the station wagon. The company allowed $2,000 for the two cars that were traded in. The balance of $2,625 was paid by check drawn on the account of Florene. For purposes of the trade Community Motors valued the Dodge at $1,559 and the Ford at $750. The wholesale value of the automobiles was $700 for the Ford and $1,250 for the Dodge. After the sale on May 15, Clyde H. Johnson brought the station wagon back several times for service work.

On June 1, Florene paid $10,144.19, being the balance of the down payment due on the Cardinal Courts, and assumed the existing mortgages in the approximate amount of $30,000. She took possession of the courts, and on June 3 the deed conveying the property to Florene was recorded.

During the month of June and part of July Clyde H. Johnson was living at the Cardinal Courts. While there he assisted Florene in operating the courts. In the latter part of July, on the advice of her attorney, Florene required Clyde H. Johnson to leave the courts. At the time ·of the trial his whereabouts were unknown.

### 3.

According to her testimony plaintiff was in no hurry to marry Clyde H. Johnson, and did not lend him any money on his promise to marry her. In fact, she testified that he was in a hurry to

get married but she wasn't. It seems that the loans made by her prior to her marriage to Clyde H. Johnson were merely business loans. These loans included the following:

January 2, 1954, $9,226.86;

July 30, 1954, $9,000;

September 17, 1954, $9,000;

December 1, 1954, the 1953 Chrysler was obtained by Clyde H. Johnson;

March 20, 1955, $1,400.

These were all loans of money at 2 percent, and Clyde H. Johnson told plaintiff that he wanted the money for use in purchasing stock and increasing his business.

Plaintiff and Clyde H. Johnson were married on July 13, 1955, and subsequent to that plaintiff made two further loans to Clyde H. Johnson, one being the $6,000 loan on July 16, 1955, and the other being the $3,000 loan in October of 1955. And, as heretofore stated, her $1,000 diamond ring was taken by Clyde H. Johnson in February of 1957.

### 4.

A record of Clyde H. Johnson's bank balances in the Oklahoma National Bank was introduced in evidence. The record extends from December 16, 1953, to April 29, 1957.

On December 16, 1953, his bank balance was $683.91. From that time until July 20, 1954, his highest bank balance was $2,777.04 (February 24), and his lowest balance was $130.04 (January 11).

During the period from July 21, 1954, to October 13, 1954, his account ranged from a low of $426.68 (August 13) to a high of $6,699.79 (October 1).

On October 14, 1954, his balance was $1,929.98. On October 15, 1954, his balance was $18,593.02. From October 15, 1954, to December 3, 1954, his lowest balance was $14,359.48 (November 4), and on December 3, 1954, he reached a high balance of $19,593.26.

Subsequent to December, 1954, his account fluctuated and his balance was gradually reduced until it reached a low of $2,364.41 on June 24, 1955. On July 16, 1955, his balance was back up to $7,814.99. On July 18, 1955, it was increased to $13,721.38. After that the account fluctuated and gradually the balance decreased until it reached a low of $5,313.86 on September 24, 1955. Then the balance began to increase until it reached a high of $16,423.96 on April 24, 1956. And as late as August 3, 1956, the balance was $16,418.68.

After August 3, 1956, the balance continued to fluctuate, going as low as $6,092.20 (November 26, 1956) and climbing back to $14,754.76 on February 15, 1957.

As late as February 28, 1957, the balance was $14,009.88. By March 4, 1957, it had dropped to $8,767.94, but on March 30, 1957, it was back up to $9,297.04.

On April 1, 1957, the balance was $6,265.86; April 4, $6,727.58; April 6, $5,866.57; April 8, $1,781.52; April 17, $1,177.04. And on April 29, 1957, the account was closed by a check in the sum of $1,177.04.

### Discussion

Plaintiff contends that she is entitled to a judgment against Clyde H. Johnson for the money she loaned him; the value of the 1953 Chrysler automobile that he obtained from her, and the value of the diamond ring which he took without her permission. Plaintiff also contends that the Court should declare a constructive trust in her favor against the new station wagon purchased in the name of the Cardinal Courts, and against the Cardinal Courts, "and that she have a lien upon said property to the extent of the investment of her funds in said property". Plaintiff further seeks a judgment ordering Florene to return to her the furniture taken from Chickasha, Oklahoma.

The defendant, Florene, contends that there was no constructive trust and that in any event none of plaintiff's funds have been traced into her hands or into the Cardinal Courts, station wagon, or furniture.

The defendant, Clyde H. Johnson, did not appear at the trial, and no testimony was offered in his behalf.

Upon the record in this case plaintiff clearly is entitled to a judgment against the defendant, Clyde H. Johnson, in the sum of $41,126.86, representing loans in the sum of $37,626.86; the diamond ring worth $1,000; and the 1953 Chrysler automobile worth $2,500.

The primary question in the case is whether plaintiff has established a constructive trust against the Cardinal Courts, station wagon, and furniture. To establish such a trust the plaintiff must first show facts giving rise to a constructive trust and must then trace the trust funds into the hands of a person having no better title.

■ The alleged trust in the instant case was not in writing, and it is well settled that to establish a constructive trust by parol evidence a party must establish his or her case by evidence which is clear, cogent, and convincing. American Bonding Co. of Baltimore v. Hord, 8 Cir., 98 F.2d 350; S & M Oil Co. v. Mosley, Ark., 297 S.W.2d 926; Neill v. Neill, 221 Ark. 893, 257 S.W.2d 26; McNutt v. Carnes, 213 Ark. 346, 210 S.W.2d 290; Ripley v. Kelly, 207 Ark. 1011, 183 S.W.2d 793; Wofford v. Jackson, 194 Ark. 1049, 111 S.W.2d 542; Davidson v. Edwards, 168 Ark. 306, 270 S.W. 94; and see generally 89 C.J.S. Trusts § 158, p. 1079 et seq.

■ It is equally well established that a cestui que trust may follow trust funds only if such funds can be identified and traced into the specific fund or thing which is sought to be charged. McCallum v. Anderson, 10 Cir., 147 F.2d 811; In re Van Meter, D.C.W.D.Ark., 135 F.Supp. 781; Thomas v. Wasson, 191 Ark. 869, 88 S.W.2d 327.

In the case of In re Van Meter, supra, the court beginning at page 785 of 135 F.Supp. said:

"It is well settled that misappropriated or trust funds may be recovered by the true owner provided he is able to trace the funds into the hands of a person who has no better right thereto, and this is true even though the funds have been converted into a new form. In re Tate-Jones & Co., Inc., D.C.Pa., 85 F.Supp. 971; Rainwater v. Wildman, 172 Ark. 521, 289 S.W. 488; Red Bud Realty Co. v. South, 96 Ark. 281, 131 S.W. 340.

"But, if the original owner is not able to trace the funds into any specific property, he has no grounds for the establishment of a constructive trust or an equitable lien. See, Rainwater v. Wildman, supra."

And in Red Bud Realty Company v. South, 96 Ark. 281, 296, 131 S.W. 340, 347, the court said:

"But before such a trust arises it is essential that the fund thus wrongfully appropriated and converted be traced to the acquisition of the new species of property or investment upon which it is sought to impress the trust. The misappropriated funds must be traced to and located in the changed form or species of property. It can not be pursued and located in the general mass of the wrongdoer's property because such wrongdoer has incurred indebtedness generally in the acquisition of the general mass of his property and has subsequently applied the misappropriated funds to the payment of his debts generally."

When the facts in the instant case are viewed in the light of the above stated rules of law, the Court is convinced that plaintiff has failed to establish a constructive trust against the defendant, Florene Vivian Johnson. In the first place, it is extremely doubtful whether the facts are sufficient to establish a constructive trust. The loans made by plaintiff to Clyde H. Johnson were merely business loans, and most of them were made prior to the marriage of plaintiff and Clyde H. Johnson at a time when no fiduciary or confidential relationship existed between them.

If there was any promise made by Clyde H. Johnson to plaintiff it was merely a promise or statement that he would use the money in building up the business. And an examination of his bank account indicates that he actually may have used a part of the money in the business.

Moreover, even if the evidence were sufficient to establish a constructive trust with regard to the money loaned Clyde H. Johnson by plaintiff, there is a complete failure to trace any of that money into the hands of the defendant, Florene Vivian Johnson, or into the Cardinal Courts, station wagon, and furniture in question. All the loans made by plaintiff to Clyde H. Johnson were made in 1954 and 1955. During that period the only money that passed from Clyde H. Johnson to Florene was $2,000 in December of 1954 and $715 in December of 1955. There was no showing whatsoever as to whether these payments were from Clyde H. Johnson's own money or from the money loaned him by plaintiff. Insofar as the record shows Florene received no additional money from Clyde H. Johnson until March 21, 1957, when she received $5,600. On April 3, 1957, she received $7,500 from him. These transactions occurred more than a year after Clyde H. Johnson obtained the last loan from plaintiff, and there was no evidence whatsoever that the money Florene received was money that had been obtained by Clyde H. Johnson from plaintiff.

It is true that the evidence indicates strongly that at least some of the money loaned to Clyde H. Johnson by plaintiff went into his bank account in the Oklahoma National Bank at Chickasha, Oklahoma. For example, on October 15, 1954, he deposited $14,469 in cash in the bank account, and it is quite probable that a substantial part of this money was money he had obtained from plaintiff. And on July 18, 1955, he deposited $6,312.30 in cash, and a substantial part of this deposit probably came from the $6,000 he had borrowed from plaintiff two days before.

If, in fact, these deposits contained money loaned by plaintiff to Clyde H. Johnson, plaintiff is in no better position because under the law of commingled trust funds the deposits cannot be traced into the hands of Florene.

During the period from January 4, 1954, to April 6, 1957, Clyde H. Johnson made total cash deposits of $242,169.96 in his bank account in the Oklahoma National Bank. Thus, if any of the money loaned Clyde H. Johnson by plaintiff was deposited in the account, in was commingled with Clyde H. Johnson's own money. The rule with regard to the commingling of trust funds is stated in Covey v. Cannon, 104 Ark. 550, 560, 149 S.W. 514, 517, as follows:

"It was formerly held that the blending of trust money with that of the trustee defeated the owner's title, upon the theory that there was no way to identify money, and it could not, therefore, be recovered in specie; but the better rule, and one that seems now well established, avoids that difficulty, in the case of commingled or blended moneys in a bank account from which amounts have been drawn from time to time, by the presumption that the sums drawn out were the moneys of the bank or trustee, which it had the right to expend in its own business, and that the balance remaining included the trust fund, which the bank had no right to use. Of course, this presumption will not stand against evidence; and it is a part of the rule applicable to following misappropriated moneys into a bank account that if, at any time during the currency of the commingled account, the amounts drawn out leave a balance less than the amount of the trust funds the trust funds must be regarded as dissipated to that extent and except as to such balance; and the sums subsequently added to the account from other sources can not be attributed to the trust fund."

To the same effect see McCallum v. Anderson, 10 Cir., 147 F.2d 811; Chambers v. Williams, 199 Ark. 40, 132 S.W.2d 654; Powell v. Missouri & Arkansas Land & Mining Cb., 99 Ark. 553, 139 S.W. 299. When the rule is applied to the facts in the instant case it is evident that plaintiff cannot trace her funds through the bank account of Clyde H. Johnson and into the hands of Florene. The $14,469 cash deposit was made on October 15, 1954. Subsequent to that, Clyde H. Johnson's bank account fluctuated until it reached a low of $2,364.41 on June 24, 1955. The $6,312.30 cash deposit was made on July 18, 1955, and subsequent to that the bank balance fluctuated until it reached a low of $5,313.86 on September 24, 1955. As of that date the largest possible amount that could be found to be trust funds was the said sum of $5,313.86.

Subsequently, the balance increased to a high of $16,423.96 on April 24, 1956, but under the commingled trust funds rule these additional deposits cannot be considered as being trust funds. The last money shown to have been sent to Florene by Clyde H. Johnson was deposited by her in her bank account on April 3, 1957. On April 4, 1957, Clyde H. Johnson still had a balance of $6,727.58, which under the commingled trust fund rule would be presumed to include the $5,313.86 in trust funds (if in fact such amount represented trust funds). Therefore, even if the $5,600 Florene received on March 21, 1957, and the $7,500 she received on April 3, 1957, came from Clyde H. Johnson's bank account, said money could not be presumed to be a part of the trust funds, if any.

It follows that even if money loaned Clyde H. Johnson by plaintiff was in fact deposited in his bank account, said money was commingled with his own funds and cannot be traced into the hands of Florene.

In her brief plaintiff states:

"We cannot trace this money dollar for dollar from Clyde to her, but adding circumstance upon circumstance and applying good common sense and reasoning, we are convinced that this money is a part of the money fraudulently obtained from Alice M. Johnson by Clyde H. Johnson."

The difficulty with plaintiff's contention is that there is no tangible evidence upon which the Court can trace plaintiff's money into the hands of Florene. In view of all the evidence the Court has a strong suspicion that some of plaintiff's money may have been included in the money sent to Florene by Clyde H. Johnson. But suspicion is not enough. The Court's decision must be based upon the evidence and there is no evidence from which the Court can reasonably conclude that any of plaintiff's money has been traced into the hands of Florene and into the Cardinal Courts, the station wagon, or furniture.

With regard to plaintiff's specific contention that a constructive trust should be declared on the station wagon, it must be remembered that according to plaintiff's testimony her 1953 Chrysler was obtained by Clyde H. Johnson in December of 1954. The car was used until December of 1956 when Clyde H. Johnson traded it in on a 1955 Dodge automobile. There was no evidence as to the amount allowed to him on the trade-in of the Chrysler, and therefore there is no way to trace the value of the Chrysler into the Dodge, and likewise no way of tracing its value when the Dodge was traded in on the station wagon in May of 1957. Nor was there any evidence to establish that the $2,625 paid by Florene was money that had been obtained by Clyde H. Johnson from plaintiff.

As to her claim for the furniture it is not clear from the evidence whether the furniture was owned by plaintiff or by Clyde H. Johnson. It is true that plaintiff testified she loaned Clyde H. Johnson $3,000 for the purchase of furniture, but she also testified that when the furniture was purchased he paid for it by check. The Court has no way of knowing whether the furniture was paid for with plaintiff's money or with Clyde

H. Johnson's money and, therefore, plaintiff has failed to prove her claim with regard to the furniture.

The Court fully realizes the difficulties facing plaintiff in attempting to establish her claims in the absence of the testimony of Clyde H. Johnson. But the Court must determine the case upon the record before it, and upon that record the Court is convinced that plaintiff has failed to trace any money of plaintiff into the hands of Florene or into the Cardinal Courts, the station wagon, or furniture. Since the Court has reached this conclusion it is unnecessary for the Court to pass upon the remaining contentions of the parties.[3]

#### Conclusions of Law

**1.**

The Court has jurisdiction of the parties and the subject matter herein.

**2.**

Plaintiff is entitled to a judgment against the defendant, Clyde H. Johnson, in the sum of $41,126.86, together with her costs, and to an order requiring him to return to plaintiff her diamond ring. In the event the ring is returned, the defendant, Clyde H. Johnson, will be credited with $1,000 on the judgment.

**3.**

The evidence is insufficient to establish a constructive trust in favor of plaintiff against the Cardinal Courts, the station wagon in the name of the Cardinal Courts, or the furniture, and the complaint of plaintiff against the defendant, Florene Vivian Johnson, should be dismissed without costs.

**4.**

A judgment in accordance with the above should be entered.

---

3. The loans in the instant case were made in Oklahoma and the property sought to be charged with a constructive trust is located in Arkansas. In their briefs the parties made no specific contention with regard to which law applies in the instant case, but it makes no actual difference since the law of Arkansas and the law of Oklahoma is the same with respect to the issues involved herein. Most of the cases cited by the parties in their briefs are Arkansas cases, and in this opinion the Court has also cited primarily Arkansas decisions.